No. 20600.

ELIZABETH ROHN *v*. WELD COUNTY BANK.
(395 P.2d 1003)

Decided September 28, 1964.     Rehearing denied October 26, 1964.

Messrs. SOUTHARD and SOUTHARD, for plaintiff in error.

Messrs. HOUTCHENS, HOUTCHENS and DOOLEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFF in error will be referred to as Elizabeth; defendant in error as the Bank; other persons to whom it will be necessary to refer are Oscar (husband of Elizabeth) and Oscar, Jr. (son of Elizabeth and Oscar).

The Bank sued Elizabeth in the Weld County District Court on a contract of "guarantee." Trial was to the court, and judgment was in favor of the Bank and against Elizabeth in the amount of $9825.49 plus costs.

Writ of error is directed to the judgment on the ground that the court erred as a matter of law in interpreting the "guarantee" contract of Elizabeth to cover the debt sought to be collected.

We agree the court was in error. The contract is not

ambiguous and under the law of the case is not susceptible to the interpretation given it by the trial court.

The contract on which the Bank contends Elizabeth became liable reads as follows:

"GUARANTEE

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00), the receipt whereof is hereby acknowledged, the advancement of moneys, the giving and extending of credit by THE WELD COUNTY SAVINGS BANK, GREELEY, COLORADO, hereinafter called the 'Bank' to

OSCAR ROHN

hereinafter called the 'Borrower' and of other valuable considerations, I hereby promise to pay to the Bank any and all sums of money which the said Bank may at any time loan or advance to the Borrower.

This agreement and guarantee applies to the payment of all notes and obligations made by the Borrower to the Bank, and any renewals thereof or continuances of same, whether in whole or in part. This is a continuing guarantee.

/s/ Elizabeth Rohn

Dated at Greeley, Colorado
June 1 - 1956"

The monies sought by the Bank in its suit were not sums "loaned or advanced to the borrower, Oscar" but rather loans on a line of credit extended to Oscar, Jr. The Bank held an identical contract of "guarantee" signed only by Oscar covering transactions of Oscar, Jr. It was stipulated that Oscar, Jr., had a line of credit with the Bank extending more than ten years; that he had from time to time given security therefor in the form of chattel mortgages on farm machinery and various mortgages on crops and livestock; that for a period of eight years Oscar co-signed all of the notes, but finally that practice was discontinued and the "guarantee" was executed so that it would not be necessary for the father to come into the Bank and co-sign every

one of Oscar, Jr.'s notes. Oscar, Jr., testified that in ten years he had never been advised by the Bank that his line of credit was in any way predicated or contingent upon his mother's guarantee, but only upon the guarantee of his father.

Prior to the bringing of the suit the son defaulted on his notes to the Bank and went into bankruptcy. Oscar had died. It was claimed by the Bank that Elizabeth had by the instrument in question "guaranteed" Oscar's obligations arising out of his guarantee covering Oscar, Jr.'s line of credit. Simply stated, this is a suit to extend the provisions of Elizabeth's guarantee to cover an extraneous instrument to which she was not a party.

At no place in the instrument relied upon by the Bank—which it drafted—is there an express agreement or promise to guarantee the debt sought to be collected. For the court to arrive at its conclusion that Elizabeth was liable, it was necessary to do so by implication in construing the word "obligation" in the contract to be broad enough to cover the "guarantee" of Oscar on the transactions of Oscar, Jr., and not just Oscar's own loans or advancements received.

When the court considered the word "obligation" in the contract and interpreted it alone and out of context, it was error. As with contracts generally, the court in construing a guaranty is required to discover and give effect to the intention of the parties, and this must be deduced from the instrument as a whole and not from one word therein. *Garfield Trust Co. v. Teichmann*, 95 Atl. (2d) 18, 24 N. J. Super. 519. See also: Stearns Law of Suretyship (5th Ed.) Elder's Revision, § 4.2; 24 Am. Jur. Guaranty § 56.

There are many guideposts in the instrument that reveal the intention of the parties. It is not in dispute that Oscar Rohn is Elizabeth's husband and not her son. It is stated therein it is to cover "the advancement of moneys" to Oscar Rohn; that it was for the giving and extending of credit to Oscar Rohn. He is described

as a "Borrower" and not an obligor. The express promise to pay refers only to "sums of money which the said bank may at any time loan or advance to the borrower." Then there is a reference to payment of *"notes* and obligations made by the *borrower"* and any renewals thereof or continuances of the same.

■ By the rule of ejusdem generis general terms are restricted in meaning to that of the particular words preceding them. This rule is stated by Brandt, The Law of Suretyship and Guaranty (3rd Ed. 1905) § 103, as follows:

"When specific terms are followed by a general term, the general term is restricted to things of the same kind or class, and general terms are controlled by recitals as to the purpose of the parties."

See also *First National Bank of Waterloo v. Story,* 140 N.Y.S. 31; affd. 163 App. Div. 279; affd. 222 N.Y. 562.

It is, therefore, obvious from the instrument that the word "obligation" refers only to the type of obligation particularly described.

■ A case very similar involving the word "debts" rather than "obligation" was *National Bank of Commerce v. Rockefeller,* 174 Fed. 22, 29. In that case an incorporator gave a personal guaranty that "debts" incurred by the corporation would be repaid. The court said as follows:

"Moreover, the contention that Rockefeller's contract of guaranty is elastic, and comprehensive enough to cover the commission company's guaranty of the payment of notes which it pledged as collateral for the payment of a debt which was not covered by his guaranty is too subtle to be sound. The parties to this plain and simple contract never could have reasonably contemplated any liability brought about by this circuitous process. Rockefeller's guaranty was for the payment of debts which the commission company might contract or

become liable for. The commission company's guaranty of the collateral did not constitute a debt. It was an executory contract only. It might or might not ripen into a debt. Unlike a surety, which becomes at once liable unconditionally as an original promisor with his principal for a debt, a guarantor becomes liable only in the event of default by the principal, and his liability does not generally attach unless the creditor gives him reasonable notice of the default of the principal, or unless due diligence is exercised to collect from the principal. 1 Brandt on Suretyship and Guaranty, §2, and cases cited. *In other words, the contracting of a debt is a single act, resulting in an immediate and unconditional obligation, while the contract of guaranty is complicated, and subject to many conditions which may defeat its enforcement. Obviously, a guaranty of a debt is one thing, and the guaranty of a guaranty is another thing.* A contract of the former kind only cannot be so construed as to cover the obligation which would be undertaken by a contract of the latter kind. The contracts of a guarantor are strictissimi juris, and unless a given transaction is brought clearly within the obligation of the guarantor no liability is incurred." (Emphasis supplied.)

Applying the same reasoning to the case at bar, the word "obligation" obviously referred to the obligation immediately and directly contracted for upon the making of the advancements referred to in the instrument. The "guarantee" contract of Oscar for Oscar, Jr.'s line of credit was an executory contract only. It might or might not ripen into an obligation. He would only become liable in the event of default by Oscar, Jr. The Bank relies heavily upon the case of *Fannin State Bank v. Grossman,* 30 Ill. App. (2d) 484, 175 N.E. (2d) 268, and the cases in 85 A.L.R. (2d) 1183. The instrument in the case at bar is in no manner similar or even closely related to the instrument in the Grossman case. In that

case the "guarantee" was entirely in general terms as follows:

"* * * unconditionally guarantees prompt payment when due and at all times thereafter of any and all indebtedness and liability of every kind, nature and character and all renewals, extensions and modifications thereof now existing or which may hereafter exist from the Borrower to said Bank, howsoever, and whensoever created, or arising or evidenced, or acquired. * * *"

In that instrument the court refused to construe out of context the word "borrower" just as we say the court in the case at bar should refuse to construe the word "obligation" out of context. In the Illinois case there were no specific descriptions of the types of transactions involved. In the case at bar we have described the line of credit, money advanced and the loan, etc., specifically describing the nature of the debt.

One thing that stands out in the cases dealing with commercial guaranty is that each case turns on the particular terms used and the circumstances of the case which indicate the intention of the parties. The terms of the instrument signed by Elizabeth are peculiarly and particularly confined to debts arising out of credit extended to Oscar.

The judgment is reversed and the cause remanded to the trial court to dismiss the suit.

MR. JUSTICE HALL and MR. JUSTICE PRINGLE concur.