No. 47,161

Trego WaKeeney State Bank, *Appellee,* v. Donald Maier and Daniel D. Maier, *Appellants.*

(519 P. 2d 743)

Opinion filed March 2, 1974.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellants.

*William Wagner,* of WaKeeney, argued the cause, and *Ernest J. Deines,* of WaKeeney, was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: The question presented for our determination on appeal is whether a father's guaranty to a bank, covering his son's obligations to the bank, imposes liability upon the father for a debt created by the son's guaranty for another party at the same bank. The trial court found the guaranty of the father guaranteed the guaranty of the son and imposed liability. Appeal has been duly perfected.

The facts have been agreed upon by the parties and stipulated. During the early part of June 1969, Donald Maier (defendant) personally borrowed from the Trego WaKeeney State Bank (plaintiff-appellee) a definite sum of money (not disclosed by the record) evidenced by a note which he gave to the bank. The sum of money personally due and owing by Donald Maier to the bank fluctuated from time to time. At the time of suit his personal indebtedness was evidenced by a renewal note of the original indebtedness in the amount of $4,500 with interest at 8½%. The renewal note was dated June 21, 1971, and was payable December 18, 1971. Shortly after the original loan was made to Donald by the bank, on June 23, 1969, Daniel Maier (defendant-appellant), the father of Donald, executed a guaranty to the bank in consideration for the extension of credit by the bank to Donald.

On the 18th day of November, 1970, Challenger Motors, Inc., a Kansas corporation, in which Donald Maier was a stockholder and also secretary-treasurer, executed its note to the Trego WaKeeney State Bank in the sum of $48,000. Daniel Maier had no business contact with the motor company, no stock ownership in the company and his only connection with it was that he was the father of Donald Maier, the co-defendant.

On the 6th day of March, 1971, Donald Maier executed a guaranty to the Trego WaKeeney State Bank guaranteeing the Challenger note of November 18, 1970. Joe Spresser, also an officer and stockholder of Challenger Motors, on the same date, signed an identical guaranty to the bank guaranteeing the Challenger note. Spresser was not made a party defendant to this action.

The business of Challenger Motors, Inc., failed and its note at the bank was in default. Donald Maier, being without funds, defaulted on his personal note to the bank, and he was financially incapable of making good on his guaranty on the Challenger Motors note. The financial statement filed with the bank by Daniel disclosed his net worth to be $115,270 as of June 25, 1970. The bank sought to collect from Daniel on both notes, Donald's personal note and the Challenger Motors' note.

On the 15th day of November, 1971, Daniel Maier, after retaining legal counsel, attempted to pay off the Donald Maier note which he had guaranteed. A letter from counsel covering this attempt was introduced in evidence, but the bank refused to accept the tender on the ground that Daniel was obligated on both Donald's

personal note and on the Challenger Motors note which Donald had guaranteed.

On the 28th day of March, 1972, suit was commenced on both notes by the bank against Daniel Maier and his son Donald Maier. Both Daniel and his son employed the same attorney and filed their answer. Daniel admitted that his guaranty of June 23, 1969, covered the personal note, and in his answer Daniel confessed judgment thereon, which judgment has been paid as ordered by the trial court without prejudice to Daniel and his right of appeal. In his answer Daniel denied that his guaranty of June 23, 1969, covered the guaranty of Donald dated March 6, 1971, for reasons set forth in his answer.

When this action was filed the balance due on the Challenger note was $39,402.28 plus interest from March 17, 1972, at 9% per annum. The trial court after hearing the matter and considering argument of counsel held that Daniel Maier, by his guaranty, clearly guaranteed payment to the bank of all liabilities owing to it by Donald Maier, including the personal obligation of Donald Maier arising from his guaranty of the balance due on the note of Challenger Motors, Inc., and rendered judgment for the bank against both Donald and Daniel for $42,553.64 with interest at 9% per annum from March 22, 1973.

The trial court, in announcing its decision, made the following comment:

". . . Since the Court found no Kansas decisions directly in point and counsel cited none, the Court is following the general rule of other jurisdictions set out in the annotation beginning at page 1183 of 85 ALR 2nd, although there are some decisions to the contrary."

The guaranty agreements executed by both Daniel and Donald and delivered to the Trego WaKeeney State Bank are identical in form. The instrument is titled "GUARANTY" and is addressed, "TO TREGO WAKEENEY STATE BANK, WAKEENEY, KANSAS:" The first three paragraphs of the guaranty agreement signed by Daniel Maier read as follows:

"The undersigned hereby request you to give, and continue to give, Donald Maier (hereinafter styled the 'borrower') from time to time as you may see fit, financial accommodations and credit, and in consideration thereof, whether the same had been heretofore given or may hereafter be given by you to *said borrower,* the undersigned hereby *guarantee* and promise and agree to make prompt payment to you, *as they severally mature,* [1] of all *overdrafts* of *said borrower,* [2] of all *loans* made, or which may be made by you to *said borrower,* [3] of all *moneys* paid by you for the use or account of *said borrower,*

and [4] of all *notes, acceptances and other paper* which have been or may be discounted for, or at the request of, *said borrower,* whether made, drawn, accepted, endorsed or not endorsed by said borrower, and whether endorsed *with or without recourse,* and [5] of *any and all other obligations, of every kind and character, now due or which may hereafter become due from said borrower to you, howsoever created,* arising or evidenced, and also of any and all renewals or extensions of any of the foregoing (all hereinafter called 'Liabilities') regardless of other collateral now held by you, or which you may hereafter acquire, as additional security to any or all of the Liabilities of *said borrower.*

"It *is* understood that *extensions* of time of payment, or renewals of any of the Liabilities shall not in any way impair the liability of the undersigned hereunder, and that the undersigned will keep posted as to all matters pertaining to this guaranty without notice from you.

"*When any of the Liabilities shall become and remain due and unpaid, the undersigned will, upon demand, pay the amount due thereon.*" (Emphasis added.)

The numerals in brackets and the emphasis in the guaranty quoted above have been added to facilitate further discussion of the guaranty agreement in this opinion.

The appellee argues that a written promise to pay any debt of another, without specifying the nature or limitation of such debt, renders the maker of such an instrument liable for payment of the principal's debt even though the principal is only secondarily liable (Citing, K. S. A. 84-3-416 [3]).

The appellee contends Daniel by reason of his guaranty agreed to pay any indebtedness due the bank from Donald, and Donald by reason of his guaranty given to the bank was personally liable to the bank for payment of the amount due on the Challenger Motors note. In advancing this argument the appellee relies upon the provisions immediately preceding clause [1] wherein the guarantor promises *to make payment to the bank, as they severally mature,* of the obligations of the borrower enumerated thereafter. Among these obligations is clause [5] upon which the bank relies.

The trial court relied upon *Fannin State Bank v. Grossman,* 30 Ill. App. 2d 484, 175 N. E. 2d 268, 85 A. L. R. 2d 1178 (1961), for its decision. There an action was brought on a guaranty given to a bank to recover on the principal debtor's personal endorsement of a note given to the bank by a corporation of which he was president. The court held a guaranty given to a bank on behalf of an individual covering any credit granted "*to him alone or to him and others*" and guaranteeing "*all indebtedness and liability of every kind, nature and character*" includes his liability as an endorser on

a note given to the bank by a corporation of which he is president; and that the guaranty covers both primary and secondary liabilities.

The guaranty in the *Fannin* case is distinguishable from the one here. There the guaranty given to the bank covered credit given by the bank to the borrower named in the guaranty alone "or to him and others". Here, Donald is the only person whose credit is covered by the guaranty of Daniel. Furthermore, the opinion in *Fannin* does not indicate there was a specific enumeration of the obligations of the borrower to the bank.

The appellee also relies upon language in *Fannin* to the effect that the word "borrower" used in the guaranty was merely a term of convenience and was not intended to define the extent of the guaranty.

For the reasons hereafter assigned we think the position taken by the appellee herein and the trial court lacks merit.

A guaranty in its technical sense is collateral to the principal contract which is guaranteed; and the guarantor's liability is *secondary* rather than primary or original (38 C. J. S., Guaranty, § 2, p. 1130.)

A guaranty is a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and, in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking. The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and is not an engagement jointly with the principal to do the thing. A guarantor, not being a joint contractor with the principal, is not bound like a surety to do what the principal had contracted to do, but answers only for the default of the principal. The original contract of his principal is not his contract. (*Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P. 2d 72, 58 A. L. R. 2d 1265, and authorities cited therein.)

Despite what appears to be an argument by the appellee that Donald's obligation on the Challenger Motors note is primary, the document with which we are here concerned is entitled and headed "GUARANTY". In paragraph three it specifically states: "When any of the Liabilities shall become and remain due and unpaid, the undersigned will, upon demand, pay the amount due thereon." Donald's liability on the Challenger Motors note therefore by reason of his guaranty to the bank is secondary.

This court has recently said a guarantor's liability upon an obligation cannot be extended by implication, and he should not be held beyond the precise terms of his contract. (*Kutilek v. Union National Bank of Wichita*, 213 Kan. 407, 516 P. 2d 979.)

A contract of guaranty is to be construed, as other contracts, according to the intention of the parties as determined by a reasonable interpretation of the language used, in the light of the attendant circumstances. After the intention of the parties or the scope of the guarantor's undertaking has been determined by application of general rules of construction, the obligation is strictly construed and may not be extended by construction or implication. (38 C. J. S., Guaranty, § 38 pp. 1177, 1181.) In the instant case the guaranty of Donald was executed and delivered to the bank 23 months after the guaranty of his father, Daniel, was executed and delivered to the bank.

Turning now to the language in the first paragraph of the guaranty heretofore quoted, Daniel Maier in consideration for the bank giving credit to his son Donald, the borrower, guaranteed the payment of Donald's obligations to the bank. These *obligations* were enumerated in five separate clauses, as numbered. Each of the first four enumerations are specific. They pertain to overdrafts, loans, moneys paid by the bank to Donald and all notes, acceptances and other paper discounted for Donald. These obligations of Donald, the borrower, to the bank are all primary obligations in the first instance.

The fifth enumerated clause is a catch-all. It is general and reads: "of any and all other *obligations*, of every kind and character, now due or which may hereafter become due *from said borrower to you*, howsoever created, . . ." (Emphasis added.)

The rule of *ejusdem generis* is a well known maxim of construction to aid in ascertaining the meaning of a statute or other written instrument which is ambiguous. Under the maxim, where enumeration of specific things is followed by a more general word or phrase, such general word or phrase is held to refer to things of the same kind, or things that fall within the classification of the specific terms. (*Bumpus v. United States*, 325 F. 2d 264 [10th Cir. 1963]; and *The State v. Miller*, 90 Kan. 230, 233, 133 Pac. 878.) This rule is stated in *Smith v. Russ*, 184 Kan. 773, 339 P. 2d 286, as follows:

". . . [W]here there is an uncertainty between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of

the general provisions. (Restatement of Law, Contracts, Volume 1, § 236 [c], p. 330; and 12 Am. Jur., Contracts, § 244, p. 779.) It is a reasonable inference that specific provisions express more exactly what parties intend than broad or general clauses which do not necessarily indicate that the parties had the particular matter in thought." (p. 779.)

Under the foregoing rule other primary obligations of Donald are encompassed under clause [5] and not his liabilities of a secondary type in the first instance. Extending the guaranty under clause [5] to encompass secondary liabilities of Donald would be extending the guarantor's liability by implication, contrary to the rule in *Kutilek v. Union National Bank of Wichita*, supra.

We are informed by the parties to this appeal the instant case is one of first impression in Kansas. The appellant states in his brief: "The question is can a guaranty, which is executory, guarantee another guaranty, which is also executory?"

Our research discloses an analogous situation was presented in *Failing Co. v. Cardwell Investment Co.*, 190 Kan. 509, 376 P. 2d 892. There the court, after reciting the facts, stated the issue in the case to be as follows:

". . . In substance, the Failing Company seeks to obligate Cardwell for a guaranty Failing made to Tom Ray Field Rentals, Inc. on drill pipe McPeters rented from Tom Ray, admittedly on the force of Cardwell's guaranty to Failing for purchases made by McPeters through the Failing Company's Grand Junction store." (p. 515.)

In disposing of the matter against *Failing* the court quoted the familiar rule that the liability of a guarantor upon an obligation cannot be extended by implication, and he should not be held beyond the precise terms of his contract. There however the decision turned upon the failure of the *Failing Co.* to give timely notice to *Cardwell Investment Co.* as it was required to do under *Cardwell's* commitment to *Failing*.

In the annotation following *Fannin State Bank v. Grossman*, supra, at 85 A. L. R. 2d 1183, it is stated:

". . . And to the extent that an endorsement on negotiable paper and a guaranty of payment of the instrument both impose the same secondary liability on the indorser or guarantor, it is thought that there is no reason to distinguish the two situations for purposes of this discussion, the difference being one of form rather than substance. Consequently, the scope of the annotation encompasses questions of a guarantor's responsibility for his principal's liability as a guarantor of a negotiable instrument as well as for the principal's liability as an indorser."

Several cases from other jurisdictions are directly in point.

A situation similar to the case at bar is found in *National Bank of Commerce v. Rockefeller*, 174 Fed. 22, (8th Cir. 1909). There *Rockefeller* agreed both orally and in writing to guarantee the fiscal affairs of a livestock commission company at the Kansas City livestock terminal. The commission company was incorporated under the laws of Missouri and was managed by one Frank Siegel. The guaranty executed by *Rockefeller* was a continuing one much like the one in the case at bar. The guaranty was signed by Siegel, Rockefeller and one Swain, personally, and the guaranty was executed in favor of the corporation. Suit was instituted in equity by Rockefeller to contest liability for a $45,000 loan from the bank to the commission company prior to Rockefeller's execution of the guaranty. The bank contended Rockefeller was liable for the unpaid balance of the $45,000 loan due to renewal notes executed by the commission company after Rockefeller executed his guaranty. The commission company in consideration for the renewal of its notes "pledged notes of other persons as collateral security for their payment", and the commission company guaranteed their payment by its endorsement in writing on the back of those notes. The bank argued the commission company became liable under its endorsement of the third-party notes, and when the commission company failed financially, Rockefeller was obligated by the terms of his guaranty for this liability. This is the situation presented in the instant case. In denying the bank's claim the court said:

"Moreover, the contention that Rockefeller's contract of guaranty is elastic, and comprehensive enough to cover the commission company's guaranty of the payment of the notes which it pledged as collateral for the payment of a debt which was not covered by his guaranty is too subtle to be sound. *The parties to this plain and simple contract never could have reasonably contemplated any liability brought about by this circuitous process.* Rockefeller's guaranty was for the payment of debts which the commission company might contract or become liable for. *The commission company's guaranty of the collateral did not constitute a debt. It was an executory contract only. It might or might not ripen into a debt.* Unlike a surety, which becomes at once liable unconditionally as original promisor with his principal for a debt, a guarantor becomes liable only in the event of default by the principal, and his liability does not generally attach unless the creditor gives him reasonable notice of the default of the principal, or unless due diligence is exercised to collect from the principal. . . . *In other words, the contracting of a debt is a single act, resulting in an immediate and unconditional obligation, while the contract of guaranty is complicated, and subject to many conditions which may defeat its enforcement. Obviously a guaranty of a debt is one thing,*

*and the guaranty of a guaranty is another thing.* A contract of the former kind only cannot be so construed as to cover the obligation which would be undertaken by a contract of the latter kind. *The contracts of a guarantor are strictissimi juris, and unless a given transaction is brought clearly within the obligation of the guarantor no liability is incurred."* (Emphasis added.) (pp. 29, 30.)

Similar situations arose in *Rohn v. Weld County Bank,* 155 Colo. 490, 395 P. 2d 1003 (1964); *Tremont Trust Co. v. Fine,* 226 Mass. 136, 115 N. E. 319 (1917); and in *Staver & Walker v. Locke,* 22 Or. 519, 30 Pac. 497 (1892), where the court refused to enforce liability.

The Colorado Supreme Court in *Rohn v. Weld County Bank,* supra, construed a guaranty instrument which extended credit to the guarantor's husband, who was described as *borrower* and not as obligor. The terms of the guaranty provided that the guarantor guaranteed the sums of money which the bank might advance to the *borrower,* and stated it applied to payment of all the *borrower's obligations* to the bank. The controversy before the court was whether the term *"obligations"* in the wife's guaranty included liability on a guaranty executed by the husband, and which he was financially unable to fulfill. Employing the doctrine of *ejusdem generis* the court held the general term *"obligation"* did not include the husband's liability arising out of his personal guaranty; consequently, the wife as guarantor was not held liable on the guaranty executed by her husband.

Similarly, here the term "obligations" used in the first paragraph, clause [5], of the ambiguous guaranty instrument of Daniel Maier, described as *borrower,* must be construed to refer only to the obligations of Donald which are primary in the first instance and not to Donald's liability under his guaranty of the Challenger Motors' note at the bank.

The judgment of the lower court is reversed.