GENERAL ELECTRIC CAPITAL
CORP., Plaintiff,

v.

DODSON AVIATION, INC.,
et al., Defendants.

No. CIV.A.02–2298–KHV.

United States District Court,
D. Kansas.

Oct. 14, 2003.

John K. Power, Mark T. Benedict, Husch & Eppenberger, Kansas City, Kansas City, MO, Scott Klundt, Quarles & Brady Streich Lang LLP, Phoenix, AZ, Timothy S. Harris, General Electric Capital Corporation, Chicago, IL, for Plaintiff.

Jules Mark Doty, Gleason & Doty, Chartered, Ottawa, KS, Kirk T. May, Rouse Hendricks German May PC, Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

General Electric Capital Corporation ("GE Capital") brings this diversity action against Robert L. Dodson, Sr. ("Dodson, Sr.") and Robert L. Dodson, Jr. ("Dodson, Jr.")[1] asserting that they breached a guar-

---

1. The original defendants included Dodson Aviation, Inc., Dodson International Parts, Inc., Dodson Investment, Inc., (all Kansas corporations), and Robert Lee Dodson, Sr., and Robert Lee Dodson, Jr., both residents and citizens of Kansas.

anty of debt that Dodson Aviation, Inc. owed GE Capital. Plaintiff also asserts a state law fraud claim against Dodson, Jr.[2] This matter comes before the Court on *Plaintiff's Renewed Motion For Summary Judgment Against The Guarantor Defendants [Robert L. Dodson, Sr. and Robert L. Dodson, Jr.]* (Doc. # 64) filed May 15, 2003. For reasons stated below, the Court finds that the motion should be sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the bur-

den of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to defendants.

---

**2.** The Verified Complaint alleged nine state law claims including fraud by Dodson Aviation and Dodson, Jr. (Count I); prejudgment attachment (Count II); injunctive relief (Count III); replevin (Count IV); breach of contract by Dodson Aviation (Count V); breach of guaranty by Dodson Investment (Count VI);, breach of guaranty by Dodson

International (Count VII); breach of guaranty by Dodson, Sr. (Count VIII); and, breach of guaranty by Dodson, Jr. (Count IX). The *Pretrial Order* (Doc. # 78) filed September 25, 2003, however, includes only the guaranty claims against Dodson, Sr. and Dodson, Jr. and a fraud claim against Dodson, Jr.

On October 27, 1999, GE Capital and Dodson Aviation, Inc. entered an Aircraft Dealer Floor Plan Financing & Security Agreement ("Security Agreement"). Under the Security Agreement, GE Capital agreed to extend future credit for Dodson Aviation to purchase inventory for its aircraft business. The Security Agreement provided an initial cap of $2,000,000.00 but also allowed GE Capital in its sole discretion to increase or decrease that amount. The Security Agreement also required that "such Extension of Credit is solely for the purpose of financing Inventory being acquired by [Dodson Aviation] or, if for any other purpose, such Extension of Credit has been approved in writing by [GE Capital] in its sole discretion." *Verified Complaint* (Doc. # 1), filed June 28, 2002, Ex. A., Security Agreement, ¶ 3. Under the Security Agreement, Dodson Aviation granted GE Capital a security interest in "[a]ll inventory which is financed by [GE Capital] consisting of all the aircraft, engines and other property described in any Aircraft Inventory Security Agreement which may be entered into pursuant to the terms of this Agreement ... now or hereafter owned or in the possession, custody or control of [Dodson Aviation]." *Id.* ¶ 2(a).

The Security Agreement included a Default provision which provided in part as follows:

The occurrence of any of the following events shall be deemed to constitute an Event of Default under the Agreement: (a) if [Dodson Aviation] shall fail to pay, when due, any amount owed by it to [GE Capital] ... whether hereunder or under any other instrument or agreement ... (c) [if] any warranty, representation or statement made by [Dodson Aviation] hereunder or under any other instrument or agreement between [Dodson Aviation] and [GE Capital] is false or misleading in any material respect ....

(j) if Borrower ... shall file a petition in bankruptcy.

*Id.,* ¶ 11.

On October 27, 1999, Dodson, Sr., an owner of Dodson Aviation, signed an individual guaranty of Dodson Aviation's obligations under the Security Agreement. That same day, Dodson, Jr., an owner and vice president of Dodson Aviation, also signed an individual guaranty of those obligations.

The personal guaranties of Dodson, Sr. and Dodson, Jr. both provide in relevant part as follows:

To induce you [GE Capital] to enter into, purchase, or otherwise acquire, now or at any time hereafter, any security agreements, ... and/or any other documents or instruments ... relating to, ... a loan, extension of credit or other financial accommodation (collectively, "Account Documents" and each an "Account Document") to Dodson Aviation, Incorporated, a Corporation organized and existing under the laws of the state of Kansas ("Customer") ... the undersigned ... does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, or open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale ... of collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any

kind or character whatsoever that the customer may owe you now or at any time hereafter (all such payment and performance obligations being collectively referred to as 'Obligations'). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned. *Verified Complaint* (Doc. # 1) filed June 28, 2002, Exs. E, F. at 1 (emphasis omitted).

On or about February 28, 2000, pursuant to the Security Agreement, Dodson Aviation submitted to GE Capital a Request For Extension of Credit ["Request For Credit"] for $2,750,000.00 to purchase a 1980 Raytheon Hawker aircraft powered by two Garrett engines. In the Request For Credit, Dodson Aviation reaffirmed its obligations under the Security Agreement. Dodson, Jr. executed the Request for Credit as Vice President of Dodson Aviation. Also on February 28, 2000, GE Capital and Dodson Aviation executed an "Aircraft Inventory Security Agreement" which granted GE Capital a security interest in the Hawker aircraft and the Garrett engines, and which incorporated the terms of the Security Agreement of October, 1999. On March 1, 2000, GE Capital transferred $2,750,000.00 to Dodson Aviation. GE Capital asserts that Dodson Aviation used the $2,750,000.00 to purchase the Hawker aircraft. Actually, Dodson Aviation had already purchased the Hawker aircraft, engines and equipment in December of 1999, with financing from First Source Bank. Dodson Aviation used proceeds from the GE Capital loan to pay the loan from First Source Bank. GE Capital knew this when it disbursed the $2,750,000.00 in March of 2000.

On October 12, 2001, GE Capital and Dodson Aviation entered a Modification Agreement to the Security Agreement (the "Modification Agreement") which modified the payment terms of the Security Agreement. The Modification Agreement provided that the remaining terms and conditions of the Security Agreement remained in effect. The Modification Agreement provided that the laws of the State of Connecticut govern the Modification Agreement.

The Modification Agreement required monthly payments of $33,000.00 and Dodson Aviation made those payments until approximately April of 2002. Dodson Aviation made no payments after that date. Dodson Aviation is in default under the Security Agreement and Modification Agreement.

GE Capital sent demand and default letters to Dodson Aviation, Dodson, Sr. and Dodson, Jr. stating that Dodson Aviation was in default on payments under the Security Agreement and the Modification Agreement and that unless they paid the arrearage, GE Capital would accelerate the amounts due under both agreements. Defendants did not make any payments in response to the letters.

According to evidence from GE Capital, the arrearage under the Security Agreement and Modification Agreement, not including late charges, attorneys' fees and costs, and allowing all credits and set-offs, was $99,000.00 on June 24, 2002. Upon acceleration, which GE Capital contends occurred on October 31, 2002, Dodson Aviation owes GE Capital $2,483,356.22 plus charges and late fees incurred after October 31, 2002 and attorney's fees and costs. The individual defendants generally question the accuracy of these calculations but provide no alternative calculations.[3]

---

**3.** The Security Agreement obligates Dodson Aviation to pay 8.5 per cent per annum on all unpaid amounts due and owing under the

Security Agreement and Modification Agreement. Further, the Security Agreement provides that Dodson Aviation pay any costs or

On July 3, 2002, shortly after GE Capital filed this action, the three corporate defendants (Dodson Aviation, Dodson International and Dodson Investment) filed petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* On November 25, 2002, the Bankruptcy Court granted GE Capital relief from the automatic stay. In doing so, the Bankruptcy Court found that "the debtor lacks equity in the Collateral which collateral is described in the Security Agreement between the parties." *See Robert L. Dodson Jr.'s Memorandum In Opposition To Motion For Summary Judgment* (Doc. # 52) filed February 7, 2003, Ex. E., *Journal Entry Granting General Electric Capital Corporation Relief From The Automatic Stay,* filed November 25, 2002, *In re Dodson Aviation, Inc.,* No. 02 B 22337. GE Capital has now taken control of the Hawker aircraft and the Garrett engines, which have a current estimated value of $2,000,000.00. *See Dodson Jr.'s Memorandum In Opposition,* Ex. C., Affidavit of Robert L. Dodson, Jr.

### Analysis

Plaintiff asserts that it is entitled to summary judgment on its guaranty claims because Dodson Aviation defaulted on a $2,750,000.00 loan under the Security Agreement and Modification Agreement and under the terms of their personal guaranties, Dodson, Jr. and Dodson, Sr. are individually liable for the outstanding balance.[4] Dodson, Jr. asserts that GE Capital has not shown that Dodson Aviation defaulted on the Security Agreement and therefore has not shown that he is liable under his guaranty. Dodson, Sr. asserts that he is liable on his guaranty, but only for a maximum of $2,000,000.00—

the cap in the original Security Agreement. Alternatively, both individual defendants assert that if they are liable on their guaranties, the Court must reduce their obligation by the market value of the Hawker aircraft which GE Capital now possesses. Finally, both individual defendants challenge the accuracy of GE Capital's calculation of the net amount to which it is entitled.

When exercising diversity jurisdiction, the Court applies the forum state's choice of law rules to determine which state's substantive law applies. *Boyd Rosene & Ass's v. Kan. Mun. Gas Agency,* 123 F.3d 1351, 1352–53 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 495–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Under Kansas law, the law of the place where the contract was made—that is, where the last act necessary for its formation was performed—governs the contract's interpretation. *Commercial Union Ins. v. John Massman Contracting,* 713 F.Supp. 1403, 1405 (D.Kan.1989); *see Gillespie v. Seymour,* 19 Kan.App.2d 754, 763, 876 P.2d 193 (1994) (Kansas follows "lex loci contractus" theory of contract interpretation; law of place contract was made governs construction of contract). In Kansas, a contract is considered "made" when and where the last act necessary for its formation is done. *Hall–Kimbrell Envtl. Servs., Inc. v. Archdiocese of Detroit,* 878 F.Supp. 1409, 1414 n. 3 (D.Kan. 1995) (citing *Neumer v. Yellow Freight Sys., Inc.,* 220 Kan. 607, Syl. ¶ 2, 556 P.2d 202 (1976)). The parties have stipulated that "the parties in substantial part entered into the agreements which form the basis of GE Capital's claims in Ottawa, Kansas." Although this suggests that

---

expenses that GE Capital incurs to collect and enforce the obligations of Dodson Aviation.

4. Plaintiff contends that in addition to the loan balance, it is also entitled to interest, attorneys fees and costs to be proved after judgment.

Kansas law controls, the summary judgment materials do not indicate where the last act necessary for contract formation occurred. Further, under Kansas choice of law rules, the Court must enforce a valid contractual choice of law provision. *Peoples Nat'l Bank,* 931 F.Supp. at 1530. The guaranties do not include a choice of law provision. The Security Agreement, however, provides that New York law applies, and the Modification Agreement provides that Connecticut law applies. The parties agree that the law of Kansas, New York or Connecticut applies in this case but "are unable to agree on what law applies to what claims and issues." *Pretrial Order* (Doc. # 78) filed September 25, 2003. It appears that the laws of Kansas, New York and Connecticut present no conflict on the law which applies to the Guaranties, and the Court will apply Kansas law. *Compare Overland Park Sav. & Loan Ass'n v. Miller,* 243 Kan. 730, 738, 763 P.2d 1092 (1988) (after guaranty is construed based on intention of parties as determined by general rules of contract construction, guarantor's obligation is strictly construed and may not be extended by construction or implication); *Continental Airlines, Inc. v. Lelakis,* 943 F.Supp. 300, 304 (S.D.N.Y.1996) (same); *Regency Sav. Bank v. Westmark Partners,* 59 Conn.App. 160, 756 A.2d 299, 302 (2000) (construing contract of guaranty to effectuate intent of parties based on language used interpreted in the light of circumstances connected with transaction).

Dodson, Sr. concedes that Dodson Aviation defaulted on the $2,750,000.00 loan but asserts that when he executed the guaranty, the parties contemplated only a $2,000,000.00 guaranty, as reflected by the cap in the original Security Agreement which they executed on the same day. In effect he concedes liability on his guaranty of up to $2,000,000.00. By contrast, Dodson, Jr. asserts that the Security Agreement does not govern the $2,750,000.00

loan and that plaintiff therefore cannot show as a matter of law that Dodson Aviation defaulted under the Security Agreement or the Modification Agreement. He then asserts that because plaintiff has shown no default, his personal guaranty cannot be enforced. In support of his argument, Dodson Jr. notes (1) that the $2,750,000.00 advance exceeded the original $2,000,000.00 cap of the Security Agreement, and (2) that Dodson Aviation used the advance to pay the bank for equipment which it had already purchased. In response to both defendants' argument, GE Capital asserts that the express language of the guaranties provides that Dodson Sr. and Dodson Jr. are each liable for all of the money that Dodson Aviation owes GE Capital.

▮ The Kansas Supreme Court has set out the following established principles related to a guaranty:

> The law of guaranty is a part of the law of contracts, a guaranty is a type or kind of contract. For a guaranty there must be at least three parties: a guarantor, a creditor (the individual to whom the promise is made), and a debtor. The guaranty is an obligation collateral to another contractual duty to perform. The contract of the guarantor is a separate contract. It is in the nature of a warranty by the guarantor that the thing guaranteed to be accomplished by the principal shall be done, and is not an engagement jointly with the principal to do the act. *See Trego WaKeeney State Bank v. Maier,* 214 Kan. 169, 519 P.2d 743 (1974). * * *
>
> A guaranty may be either continuing or restricted. The contract is restricted if it is limited to guarantee a single transaction or a number of specific transactions and is not effective for transactions other than those guaranteed. The contract is continuing if it contemplates a

future course of dealing during an indefinite period or it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. An offer for a continuing guaranty contract is ordinarily effective until revoked by the guarantor or extinguished by some rule of law.

*Iola State Bank v. Biggs,* 233 Kan. 450, 452–53, 662 P.2d 563, 567 (1983).

■■■ A contract of guaranty is construed according to the intention of the parties as determined by a reasonable interpretation of the language used in the light of the circumstances. *Overland Park Sav. & Loan Ass'n,* 243 Kan. at 738, 763 P.2d at 1097–98. After the intention of the parties or the scope of the guarantors' undertaking has been determined by application of general rules of construction, "the obligation is strictly construed and may not be extended by construction or implication" *Id.; see Iola State Bank,* 233 Kan. at 450, 662 P.2d 563; *Trego WaKeeney State Bank v. Maier,* 214 Kan. 169, Syl. ¶¶ 2, 3, 519 P.2d 743 (1974). In determining the intention of the parties and the scope of the guarantor's undertaking, the Court must consider the surrounding circumstances. *See Overland Park Savings & Loan,* 243 Kan. at 738, 763 P.2d at 1098.

The extent of the guarantors' liability depends upon the language of the guaranty itself and is usually equal to that of the principal debtor. "[A] guarantor is liable only in the event and to the extent that his principal is liable." *Id.* at 741; 763 P.2d at 1100.

■■■ In this case, the critical question is what debt or obligation the Dodsons undertook to guaranty.[5] Dodson, Jr. contends that the $2,750,000.00 loan to Dodson Aviation was not made under the Security Agreement, which included a $2,000,000.00 cap. GE Capital contends that the explicit language of the Security Agreement and guaranties demonstrates that the $2,750,000.00 loan was extended under Security Agreement. It further argues that the Dodsons agreed to guarantee the total amount of any loan from GE Capital to Dodson Aviation, whatever the amount and whether made under the Security Agreement.

After careful consideration, the Court agrees with GE Capital's assessment of defendants' individual liability under the guaranties. The guaranties provide that Dodson, Jr. and Dodson, Sr. each personally guaranteed:

> the due regular and punctual payment of any sum or sums of money which [Dodson Aviation] may owe to [GE Capital]

5. The evidence before the Court indicates that the individual Dodson, Jr. and Dodson, Sr. guaranties induced GE Capital to make the loans to Dodson Aviation. Dodson, Jr. is an owner and Vice President of Dodson Aviation. Dodson, Sr. is an owner of Dodson Aviation. GE Capital and Dodson Aviation entered the Security Agreement on October 27, 1999. Although the Security Agreement does not specifically require a guaranty, it contemplates the possibility of one. *See, e.g.,* Security Agreement ¶ 11, (*Verified Complaint,* Ex. A) ("Default: The occurrence of any of the following events shall constitute an Event of Default under the Agreement: ... (h) if Borrower or any guarantor or surety for the

Obligations shall die, become insolvent or cease to do business as a going concern, or any guarantor or surety terminates such guaranty or suretyship with respect to the Borrower; ... (j) if Borrower or any guarantor of, or surety for, the Obligations shall make an assignment for the benefit of creditors"). Obviously, GE Capital did not want to finance the inventory for Dodson Aviation (as set out in the Security Agreement and later in the Request for Extension of Credit) without the additional protection of the personal guaranties. Further, the Security Agreement and personal guaranties were signed the same day.

now or at any time hereafter, whether evidenced by an Account document, an open account or otherwise, and whether it represents principal, interest, ... or any other type of sum of any kind whatsoever that [Dodson Aviation] may owe to [GE Capital] now or at any time hereafter.

*See Verified Complaint* (Doc. # 1) Ex. E, F. These sweeping personal guaranties provide that Dodson Jr. and Dodson Sr. are liable for the total amount of Dodson Aviation's debt. The individual defendants do not dispute that GE Capital loaned Dodson Aviation $2,750,000.00. Further, they do not contend that Dodson Aviation has repaid that loan. Defendants merely argue that the loan exceeded the $2,000,000.00 cap. This argument ignores the fact that the Security Agreement provided that GE Capital could unilaterally lower or raise the authorized amount. In granting Dodson Aviation's Request For Credit in March, 2000, GE Capital indeed raised the authorized amount. Read together, the unlimited language of the guaranties and the unfettered discretion of GE Capital to raise the credit limit unambiguously provide that the guaranties cover the $2,750,000.00 loan under the Security Agreement.

Dodson, Jr. also argues that GE Capital has not shown a default under the Security Agreement because the loan was not made under the Security Agreement. He reasons that the Security Agreement contemplates the "purchase" of inventory and when Dodson Aviation applied for the loan from GE Capital it had already purchased the Hawker aircraft with a loan from another bank. The documents do not define a "purchase," but the Court views the argument as an exercise in semantics. Dodson Aviation purchased the Hawker aircraft as inventory with funds from First Source Bank. Three months later, Dodson Aviation borrowed $2,750,000.00 from GE Capital to pay off First Source Bank. The Hawker aircraft remained in inventory and the funds which GE Capital advanced were purchase money for the aircraft and equipment—even though the bulk of the funds were disbursed for payment to First Source Bank instead of the party from whom Dodson Aviation acquired the aircraft.

█ Dodson, Jr. also contends that the Court must reduce the amount of his obligation by the value of the collateral which GE Capital has in its possession. GE Capital replies that the guaranty gives it the right to judgment before it liquidates any collateral. *See id.* at 1 ("Nothing herein shall require [GE Capital] to first seek or exhaust any remedy against Dodson Aviation ... or to first ... proceed against any ... collateral or security which may be given in connection with the Obligations"). GE Capital acknowledges that it cannot collect twice on the same debt and that any amount which it realizes through liquidation of collateral will be offset against the judgment at time of execution.

Finally, Dodson, Jr. contends that the record reveals a genuine issue of material fact regarding the method by which GE Capital applied payments and calculated interest. GE Capital replies that the interest due is based on the contract documents and notes that Dodson, Jr.'s response identifies precisely that method. GE Capital has attached to its reply copies of the payment details, and an affidavit attesting to how those details were calculated. Defendants do not specifically object to any of those calculations. The Court therefore finds that the record does not reveal a genuine issue of material fact on this point, and that the GE Capital figures should be accepted.

Defendants also assert that the record reveals a genuine issue of material fact as to the amount of their liability for attor-

ney's fees and costs. GE Capital appears to agree, and asserts that if the Court grants summary judgment on the individual guaranties, it will then submit evidence on attorney's fees and costs. The attorney's fees constitute damages for breach of contract and the Court does not enter judgment as to these damages at this time.

**IT IS THEREFORE ORDERED** that *Plaintiff's Renewed Motion For Summary Judgment Against The Guarantor Defendants [Robert L. Dodson, Sr. and Robert L. Dodson, Jr.]* (Doc. # 64) filed May 15, 2003 be and hereby is **SUSTAINED** as to the liability of each individual guarantor in the amount of $2,483,356.22.

**Plaintiff's fraud claim against Dodson, Jr., and the counterclaim of Dodson, Jr. remain for trial.**