Allied Coal and Mining Company, Appellant, v.
Tyler L. Andrews, Appellee.

Opinion filed March 2, 1943.

Rehearing denied April 20, 1943.

McKinney, Folonie & Grear, of Chicago, for appellant; George H. Grear and Jeffrey Shedd, both of Chicago, of counsel.

Fred W. Gee and Tohill & Gosnell, all of Lawrenceville, for appellee; Fred W. Gee, Noah M. Tohill and M. E. Gosnell, all of Lawrenceville, of counsel.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court of Lawrence county, in favor of Tyler L. Andrews, appellee (hereinafter called defendant), and against Allied Coal and Mining Company, a corporation, appellant (hereinafter called plaintiff).

Before going into the facts and a consideration of the cause before us, we shall give brief consideration to a motion filed on behalf of defendant to dismiss the appeal, which motion was taken with the case for consideration. The motion to dismiss the appeal is based upon the ground that the sole and only *placita* appearing in the record was the organization of the May Term, 1938, of the circuit court of Lawrence county, and that the order appealed from was entered on the 3rd day of November, 1941, in such circuit court, which is stated to be one of the judicial days of the October Term, 1941, and that the record contains no *placita* of the October Term, 1941, or a convening order, or that the court was, in fact, in session on the 3rd day of November, 1941.

The office, or purpose, of a *placita* is to show that the proceedings which are to be reviewed were had before a regularly and properly constituted, and convened, court (*Truitt v. Griffin*, 61 Ill. 26). Where the record contains a *placita* of any date prior to the date of judgment and the recital shows that other proceedings were had in said court, no further *placita* is necessary (*Paul v. Weber*, 223 Ill. App. 257; *Leafgreen v. Leafgreen*, 127 Ill. App. 184).

In the instant case, the *placita* in the record is at the very beginning of the proceedings which are to be reviewed. There is nothing in the statutes, or rules of court, applicable to appeals in this State, or in any of the precedents which we have been able to discover, which makes it either necessary or desirable that more than one *placita* appear in the record. The

*placita* at the commencement of all the proceedings is certainly adequate. The motion to dismiss the appeal is, accordingly, denied.

The action of plaintiff was filed against defendant upon certain written agreements, to which reference will be made hereafter, on the theory that there was a direct and personal obligation on part of defendant to pay a minimum trackage rental to Southern Railway Company, and to repay plaintiff for the amount advanced to cover such trackage rental, in the sum of $1,392.50, but the principal basis of the action was for damages as against defendant upon what is asserted as a contract of guaranty by which defendant had guaranteed complete performance of a coal mining contract by certain individuals comprising a copartnership doing business as Kixmiller Coal Mining Company. It is the contention of plaintiff that such guaranty likewise inured to the successor of such copartnership, Coal Spur Mining Corporation, a corporation.

The evidence discloses that on December 15, 1934, the defendant Andrews, as first party, and Fred Kixmiller and Edward F. Kixmiller, doing business as Kixmiller Coal Mining Company, as second parties, and the plaintiff, Allied Coal & Mining Company, a corporation, as third parties, entered into a contract by which the Kixmillers, as lessees of a certain mine from the defendant Andrews, agreed to operate such mine and produce and sell to plaintiff, as third party, the entire output thereof. Plaintiff agreed to purchase such entire production of coal from the Kixmillers at the market price, less a certain percentage. That contract was to cover a period of five years. In such contract it was provided that Andrews "hereby guarantees and agrees, as part of the consideration for this contract running to the third party, and as an inducement to the third party to enter into this contract, that the second parties (the Kixmillers) shall and

will at all times during the life of this contract, abide by and faithfully perform and fulfill, according to the letter and spirit thereof, all of the terms, covenants and conditions therein provided to be performed and fulfilled by second parties.'' It was likewise provided in such contract that in the event of a deficiency becoming due the Southern Railway Company, Andrews, or the second parties, agreed to promptly pay such amount, and if not paid, then the plaintiff, Allied Company (the plaintiff herein) shall have the right to pay the same and deduct the amount thereof from any amounts which at such time might be due to the defendant Andrews, or to the Kixmillers, from the plaintiff.

On September 24, 1935, a written agreement was made and executed between defendant Andrews, Coal Spur Mining Corporation, a corporation ''as successor and assign'' of the Kixmillers, and the plaintiff corporation. This agreement provided, among other things, ''the rights, duties and obligations of the second parties, 'the Kixmillers' in the said agreement were taken over and assumed by Coal Spur Mining Corporation, a corporation, with the consent of the 'first party' (defendant Andrews), and, 'third party' (plaintiff corporation) in said agreement.'' Such agreement further provided that it was agreed by the parties thereto, that the amendment to the agreement ''should be and is as fully a part of the original agreement as though its terms had been originally incorporated in said agreement.'' At the time the amendment was made and executed, an instrument was likewise signed by all the parties, by which they mutually released each other from any and all causes of action for damages and suits arising out of any breach of the terms of the original agreement, up to and including the date of the amendment, September 24, 1935. Approximately a month after the execution of the amendment to the agreement, Coal Spur Mining Company

closed and abandoned the mine, and this action was begun on May 31, 1938, to recover from the defendant, on the theory that he was a guarantor, the damages suffered by the plaintiff corporation by reason of the failure of Coal Spur Mining Corporation to perform its undertakings contained in the contract as amended, and, likewise, to recover $1,392.50 in damages suffered by plaintiff as the result of the failure of defendant to make payment of the deficiency arising in trackage charges herein referred to.

The evidence discloses that after the original agreement had been in force for some time there were contentions made that the plaintiff corporation had defaulted in failing to take all of the coal produced by the Kixmillers. In the spring of 1935 it became apparent that the Kixmillers would not have sufficient funds with which to operate the mine, and plaintiff was advancing funds to them from time to time. In June of that year the Kixmiller partners began to discuss with the plaintiff and defendant the question of organizing a corporation to take over the operation of the mine in substitution for the existing Kixmiller partnership. The contention is made by defendant that the organization of such corporation was in pursuance of a provision of the original contract, which gave the plaintiff corporation the privilege of taking over the operation of the mine through the organization of a corporation. The evidence is disputed on this point, but it does appear that on July 19 of 1935, a corporation was organized with the name "Coal Spur Mining Corporation" with one of the Kixmillers acting in conjunction with the vice president and secretary of plaintiff corporation in the organization of the new mining corporation. The representatives of the plaintiff corporation received qualifying shares of stock, but additional stock was assigned by the Kixmillers and delivered to the plaintiff corporation as security. The two Kixmillers and

the two representatives of the plaintiff corporation were directors of the new corporation. After the incorporation of the new mining company, when conditions at the mine did not improve, the plaintiff corporation telegraphed the defendant Andrews, requesting that he attend a meeting in Chicago to discuss the entire situation. As the result of such conferences the written amendment to the original agreement and the release herein referred to, were executed. At such time the representatives of the plaintiff corporation tendered their written resignation as directors and officers of the new mining company (this was done upon the advice of plaintiff's attorneys, who insisted that the resignations must be accepted by the new mining company before the amendment and release were executed). After the execution of the amendment, the Coal Spur Mining Corporation operated the mine for a period of about one month, and after it had ceased such operation the mine was never thereafter reopened.

The plaintiff corporation made good the deficiency on the minimum guaranty of trackage rental to the Southern Railway Company. At such time a balance of advancements was owed by the Coal Spur Company to the plaintiff of approximately $6,981.29, and plaintiff likewise claimed damages for nondelivery of coal by such corporation in the sum of $41,849.63. The plaintiff corporation seeks in this action to recover from defendant Andrews, the lessor, of the mine, the total sum of $50,223.42, occasioned by the default of the Coal Spur Mining Corporation.

The court below, in determining the issues before it, without intervention of jury, concluded that the amendment and the release should be considered together, and that the contention of plaintiff that defendant Andrews is liable, as guarantor, for the acts and doings of Coal Spur Mining Corporation, to the same extent that he would have been responsible for the acts and

doings of the Kixmillers, could not be maintained. It was pointed out by the trial judge that all that was done in the executed amendment to the contract was that it was agreed that Coal Spur Mining Corporation had taken over the rights and obligations of the Kixmillers, but that there was nothing in the amendment relative to a guaranty by the defendant Andrews of the Coal Spur Mining Corporation, as such. It was concluded that a contract of guaranty must be strictly construed and that before the defendant Andrews could be held as guarantor of the Coal Spur Mining Corporation, there should have been a provision to that effect in the amendment. As stated by the court below, in his remarks made in conjunction with the rendition of judgment in favor of defendant, ''Coal Spur Mining Corporation was not only different in name, but consisted of parties other than those comprising Kixmiller Mining Company.'' The court concluded that there was nothing in the amendment by which the court could say that the defendant Andrews guaranteed fulfilment of the mining contract by Coal Spur Mining Corporation, and the issues were thereupon, found for the defendant Andrews. Nothing was stated separately with reference to the question of the guaranty of the trackage rental.

We have given careful consideration to the language contained in the amendment referred to, and to the original agreement. We have, likewise, considered the respective arguments made by the parties in this cause with reference to the issues. We have reviewed the contention of the defendant that the organization of the Coal Spur Mining Corporation was pursuant to the provisions of one of the paragraphs which gave plaintiff the right to elect one of two remedies that it would pursue in event of default by the Kixmillers, that is, hold the defendant on his guaranty, or designate some other corporation to operate the mine. The fact that the plaintiff's officers aided in the creation

of the Coal Spur Mining Corporation and in the direction of its operations, within certain limits, need not be considered by us, for the reason that we believe that the judgment of the lower court should be affirmed for reasons more fundamental, and we are, accordingly, not discussing other matters which might otherwise have had a bearing on the determination of this cause.

Under the facts, as disclosed by the record, the defendant Andrews had nothing to do with the organization of the Coal Spur Mining Corporation from its creation in July of 1935, until September 24, 1935 (other than oral conversation with reference thereto). It is apparent that the only thing that defendant Andrews was asked to do was to consent that the lease of the mine be assigned to Coal Spur Mining Corporation. A consent that rights, duties and obligations of the Kixmillers, under the lease, be taken over by the Coal Spur Mining Corporation, does not, in our opinion, carry with it a guaranty of the obligations of such corporation in the operation by it of the mine. The guaranty in the original contract was of performance by the Kixmillers. A contract of guaranty must be strictly construed and can never be extended by implication (*Gilbert v. Estate of Yunk*, 214 Ill. 237; *Dupee v. Blake for use of Metropolitan Nat. Bank*, 148 Ill. 453).

In the instant case the guaranty is one of performance on part of the Kixmiller brothers. The only manner in which the Coal Spur Mining Corporation could be included in that guaranty would be by implication from the general language of the amendment, which seems to relate simply to a consent that the Coal Spur Mining Corporation operate the mine. There is no justification for extending the guaranty, by implication, to the Coal Spur Mining Corporation. The conclusion of the court below that such guaranty was not operative as to the Coal Spur Mining Corporation, under the facts, was proper.

For similar reasons we believe that the plaintiff is not entitled to recover the amount claimed for deficiency in trackage rental. The original agreement between the plaintiff, the defendant, and the Kixmillers, simply provided that the Kixmillers and the defendant were to pay the amount of any such deficiency, and that the plaintiff could deduct the amount thereof from any amounts which were due to the Kixmillers or the defendant. By the execution of the release herein referred to, on September 24, 1935, any obligation based on deficiency at that time between the various parties, was released.

In view of the fact that there is no guaranty of performance of further operations by the Coal Spur Mining Corporation by defendant, we find no basis in the record for allowing recovery of the amount of trackage rentals from defendant by plaintiff.

The judgment of the circuit court of Lawrence county was, therefore, proper, and is, accordingly, affirmed.

*Judgment affirmed.*