HARRIS TRUST AND SAVINGS BANK, Plaintiff-Appellant, *v.* ROBERT G. STEPHANS *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-1937

Opinion filed June 16, 1981.

684

Chapman & Cutler, of Chicago (Ann Acker, of counsel), for appellant.

Burke & Ryan, of Chicago (Thomas T. Burke and William E. Ryan, of counsel), for appellees.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This action was brought by Harris Trust and Savings Bank (Harris) to enforce a personal guaranty executed in 1959 by defendants Robert G. Stephans, Michael J. Stephans and Michael G. Stephans to Chicago National Bank (Chicago) covering the debts of their corporation. Following cross-motions for summary judgment, the trial court found in favor of defendants, declaring that since Chicago was merged into the Harris, as a matter of law, Harris could not enforce the guaranty as to debts created after the merger. Harris appeals from the entry of summary judgment in favor of defendants, raising as issues whether: under the Illinois Banking Act (Ill. Rev. Stat. 1977, ch. 16½, par. 101 *et seq.*) (hereinafter the Banking Act) a guaranty, which, on its face, runs in favor of a merging bank and its successors, may be enforced by the bank resulting from the merger; the subject guaranty reaches the principal debtor as guarantor; and parol evidence is admissible as to such guaranty. For the reasons set forth below, we reverse and remand for further proceedings.

Harris' verified complaint alleges that on December 31, 1959, defendants, officers and shareholders of Select Automatic Vending Equip-

ment Company[1] (Select), "* * * in consideration for advances made, and to be made and credit given and to be given by Chicago National Bank, its successors and assigns," entered into an "absolute, continuing, unconditional guaranty of any and all obligations, indebtedness, and liabilities, whether absolute or contingent, of Select * * * to Chicago * * *, its successors and assigns." A copy of the guaranty was attached to and incorporated into the complaint as an exhibit. On October 24, 1960, Chicago merged into Harris under the charter and name of Harris "* * * as the resulting bank with all the property, rights, powers, duties and obligations of each merging bank." Harris from time to time thereafter purchased, at a discount, certain installment sales contracts in which Select, as a seller, sold to the named buyers certain washing machinery. Harris paid Select for the contracts an amount equal to the aggregate unpaid installments owed on the contracts by the buyers, less Harris' discount charge, and installment payments were thereafter to be made by each buyer directly to Harris. Select corporately guarantied payment of all sums due and owing by the buyers under the contracts and agreed in the event of default to pay Harris the remaining unpaid balance. In four such transactions, the buyers defaulted on installment contracts after the contracts were assigned to Harris. In all four transactions, Select had guarantied payment to Harris of sums due in the event of default. Select is thus indebted to Harris which has demanded that defendants pay the amount owed on the basis of their personal guaranty of the obligations of Select.

Defendants' answer admitted signing the guaranties, the purchases by Harris of the installment contracts, the guaranties by Select of its customers' payments under the installment contracts, but not the amounts or facts of defaults thereunder. Defendants denied they are individually responsible for Select's debts by reason of their 1959 personal guaranty.

On April 17, 1979, Harris filed its motion for summary judgment against defendants alleging that: the personal guaranty executed by defendants covers any and all obligations of Select to Harris; Select has guarantied payment of sums due to Harris pursuant to certain retail installment contracts now in default; by virtue of the personal guaranty, defendants owe Harris amounts due on the installment contracts for which Select is liable; and parol evidence is not admissible to explain or modify the terms of the personal guaranty. Attached to the motion, *inter alia*, were Harris' certificate of merger and an affidavit by Richard Wholey, vice president of Harris working in the installment finance division, setting forth the amounts due and owing on each installment

---

[1] The corporate name was later changed to "Select Automatic Equipment and Construction Co., Inc."

contract. Defendants' motion for summary judgment filed on August 9, 1979, alleged they are not liable to Harris because: Harris was not a party to the personal guaranty and cannot enforce it; as a matter of law, said guaranty does not cover Select's corporate guaranty of its customers' payments under the installment contracts Harris purchased; and, alternatively, the guaranty is ambiguous and parol evidence submitted by defendants establishes that it was never intended to cover Select's corporate guaranty under the installment contracts purchased by Harris. Attached to defendants' motion, *inter alia*, were affidavits from the three defendants and from employees of Harris pertaining to the alleged circumstances under which the guaranty was executed, as well as various interoffice memoranda and records of Harris regarding its transactions with Select.

On January 23, 1980, the trial court granted defendants' motion for summary judgment, finding that the personal guaranty reaches credit extended by the Chicago National Bank only. The court, applying to the instant case the principle of strict construction of a guaranty in favor of the guarantor, noted that section 28 of the Banking Act provides (Ill. Rev. Stat. 1977, ch. 16½, par. 128): "Any reference to a merging or converting bank in any writing * * * shall be deemed a reference to the resulting bank *if not inconsistent with the other provisions of such writing.*" (Emphasis added.) The court concluded it would be inconsistent with the guaranty to allow Harris to enforce it with respect to loans made by Harris after the bank merger.

■■ Harris contends that, as the resulting bank of a merger, it succeeds to the rights and obligations of the merging bank (Chicago), and thus may enforce a guaranty given to Chicago with respect to indebtedness extended by Harris. Defendants argue that enforcement of the guaranty in this context would be contrary to the common law, the provisions of the Banking Act, and the language of the guaranty. Defendants contend that special guaranties are not enforceable by successor obligees, citing *Kelly-Springfield Tire Co. v. Hamilton* (1936), 230 Mo. App. 430, 91 S.W.2d 193, *Burkhardt v. Bank of America National Trust & Savings Association* (1953), 127 Colo. 251, 256 P.2d 234, *Lee v. Rubin* (Fla. App. 1960), 117 So.2d 230, *Mechanics' American National Bank v. Rowell* (Mo. 1916), 182 S.W. 989, and *Security State Bank v. Gray* (1929), 224 Mo. App. 980, 25 S.W.2d 512. These cases are inapposite to the issues presented here, since none of them was concerned with the right of a resulting bank to enforce a guaranty given to a merging bank under statute; the guaranties in controversy therein were sold or assigned rather than transferred by operation of law through statutory merger. Illinois recognizes the general principle of nonassignability of guaranties for which defendants contend. (*Second National Bank v. Diefendorf* (1878), 90 Ill. 396, 407.) That rule is not applied mechanically, however; the facts of each case

determine whether the policy underlying the rule applies. Thus, the guarantor is not released unless the "* * * essentials of the original contract have * * * been changed and the performance required of the principal is * * * materially different from that first contemplated." (*Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 301-02, 201 N.E.2d 127; *Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 412 N.E.2d 1378.) Accordingly, where the creditor-guarantee is involved in a merger pursuant to statute, the guarantor is not discharged unless there is a material alteration in the business dealings between the debtor and the creditor, and the guarantor's risk is thereby increased. *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547, 550 (applying Illinois law).

In *Albers v. McNichols* (1939), 301 Ill. App. 551, 23 N.E.2d 220, relied on by Harris, a special guaranty was executed in favor of a bank which ultimately consolidated with another bank. After merger, the resulting bank extended and renewed the indebtedness owed the original bank and later sued the guarantor thereon. At that time, the relevant provisions of the Banking Act regarding bank mergers provided that the consolidation of one corporation with another would not affect suits, causes of action or the rights of persons involving such corporations. (Ill. Rev. Stat. 1937, ch. 16½, par. 12.) The court held that the statute allowed the successor bank to enforce the guaranty made to the original bank, and that the rule of nonassignability of special guaranties was inapplicable because a succession by statutory consolidation takes place by operation of law and is thus distinct from an assignment, which takes effect by acts of the parties. (*Albers*, 301 Ill. App. 551, 556-57. Accord, *Bank of United States v. Glickman* (1934), 241 App. Div. 92, 271 N.Y.S. 90, *aff'd* (1934), 265 N.Y. 539, 193 N.E. 309; *Bank of America National Trust & Savings Association v. Wren* (1935), 6 Cal. App. 2d 317, 43 P.2d 830; *Guardian Depositors Corp. v. Currie* (1940), 292 Mich. 549, 291 N.W. 2; 9 C.J.S. *Banks and Banking* §468(b)(7), at 923 (1938).) Thus, under the result reached in *Albers*, the guaranty at bar as passed by operation of law from Chicago to Harris and is enforceable by Harris as to indebtedness extended after the merger.

Defendants maintain that *Albers v. McNichols* is distinguishable from the instant case on two grounds. First, in *Albers* the resulting bank extended and renewed a previously existing debt, whereas Harris seeks to enforce the instant guaranty as to indebtedness extended after the merger. Thus, defendants argue that although Harris could have enforced the guaranty as to indebtedness extended by Chicago, it cannot do so as to indebtedness extended by Harris. Contrary to defendants' suggestion, however, *Albers* does not turn on the fact that the obligation sought to be enforced was not a new loan by the resulting bank. Rather, the court states the broad rule that the resulting bank may rely on the guaranty as

though it had been given to the resulting bank. Furthermore, under the present law the test of whether a guaranty may be transferred is not whether new credit is extended after the transfer, but whether the obligations of the parties to the guaranty have thereby changed. (*Claude Southern Corp. v. Henry's Drive-In, Inc.*; *Essex International, Inc. v. Clamage.*) In the instant case, no such alteration has been claimed to have occurred.

The second distinction raised by defendants between *Albers v. McNichols* and the instant case is that *Albers* was decided under the prior banking act, no longer in force. According to defendants, that statute differs substantially from the current banking act, which gives a resulting bank all of the property and rights of the merging bank or banks, but contains one restriction: the last sentence of section 28 of the current act provides that reference to a merging bank found in a writing constitutes reference to the resulting bank, but only if to do so is not inconsistent with other provisions of the writing. (Ill. Rev. Stat. 1977, ch. 16½, par. 128.) Defendants argue that under the present statute, references to Chicago (the merging bank) contained in the instant guaranty should not be deemed as references to Harris, since to do so would be inconsistent with the nature of a special guaranty. This argument presupposes that special guaranties cannot be transferred which, as noted above, is a rule which does not apply in those instances, as here, where no material alterations between the debtor and the creditor had taken place so as to increase the risk of the guarantor. (*Claude Southern Corp. v. Henry's Drive-In, Inc.*; *Schranz v. I. L. Grossman, Inc.*; *Essex International, Inc. v. Clamage.*) The merger of Chicago into Harris did not alter defendants' obligations under the guaranty. The debtor corporation, of which defendants were shareholders and officers, continued to sell its installment contracts to Harris, as it sold them before the merger to Chicago. The fact that Harris, in purchasing the contracts, required more security from Select than did Chicago does not imply that Harris no longer relied on the guaranty as defendants suggest. *Essex International, Inc. v. Clamage*.

■■ ■ Defendants' argument as to the nature of a special guaranty is inconsonant with the provision in section 28 of the Banking Act that "[a]ny reference to a merging * * * bank * * * in any writing, * * * shall be deemed a reference to the resulting bank if not inconsistent with the other provisions of such writing." The inconsistency cognizable under section 28 must inhere in the terms of the guaranty when read together with the statute, a circumstance which defendants have failed to demonstrate here. Inconsistency, in this context, means that the statutory provision must contradict or negate a term of the guaranty, connoting some mutual repugnancy. (*Hunt Foods & Industries, Inc. v. Doliner* (1966), 26 App. Div. 2d 41, 43, 270 N.Y.S.2d 937, 940; *Hatley v. Stafford* (1978), 284 Or. 523,

534, 588 P.2d 603, 609.) To the contrary, here the guaranty provisions are entirely consistent with its enforcement under the statute. The guaranty provides that defendants "* * * guarantee to the Bank, its successors and assigns * * *" payment to the bank of all indebtedness, and that "[t]he provisions hereof * * * insure [*sic*] to the benefit of the Bank, its successors, legal representatives and assigns." Such language clearly shows a purpose on the part of the guarantors to include loans made by any successor of Chicago, including Harris. (See *City National Bank & Trust Co. v. Bairstow* (1943), 319 Ill. App. 632, 636, 50 N.E.2d 111; *North Texas National Bank v. Thompson* (Tex. Civ. App. 1929), 23 S.W.2d 494, *aff'd* (1931), 37 S.W.2d 735.) Defendants point out that the guaranty also states, "in consideration of advances made or to be made * * * by the Bank* * *," rather than, "by the bank, its heirs and assigns." In light of the last sentence of section 28, however, "Bank" must be read as a reference to the resulting bank, Harris. To regard that sentence as inconsistent with enforcement of the guaranty would be to construe the last sentence of section 28 as meaningless. The document also provides that it is a "* * * continuing, absolute and unconditional guaranty and shall remain in full force and effect * * *" until the bank is otherwise notified (which has not been alleged to have occurred), and that it "* * * shall be construed according to the laws of the State of Illinois," *e.g.*, section 28 of the Banking Act.

As defendants contend, guaranty agreements must be strictly construed in favor of the guarantor. (*Dee v. Bank of Oakbrook Terrace* (1980), 84 Ill. App. 3d 1022, 406 N.E.2d 195; *Allied Coal & Mining Co. v. Andrews* (1943), 318 Ill. App. 415, 48 N.E.2d 563.) That rule, however, which had been enunciated prior to the decision in *Albers v. McNichols* (*e.g., Gilbert v. Estate of Yunk* (1905), 214 Ill. 237, 73 N.E. 335), was held inapplicable in *Albers*, where a special guaranty, which contained no words of negotiability or transferability, was held enforceable by the resulting bank under the Banking Act provisions there in effect.

■■ Defendants argue in the alternative that the trial court's order should be affirmed because the personal guaranty at issue, which extends to "* * * any and all indebtedness, obligations and liabilities (whether direct or contingent or now or hereafter due or now or hereafter incurred) of the Debtor to the Bank * * *" did not cover Select's corporate guaranty of payments due under the installment contracts Harris purchased. They cite out-of-State authority for the principle that guaranties similar to the one at bar reach a debtor's primary obligations only, not secondary obligations such as guaranties. Illinois law, however, is otherwise. In *Fannin State Bank v. Grossman* (1961), 30 Ill. App. 2d 484, 175 N.E.2d 268, the defendant guarantied payment to the plaintiff of "any and all indebtedness and liability of every kind, nature and character" incurred

by Joseph Gorchoff, who subsequently endorsed a note to the plaintiff given by a corporation of which he was president. The court held the guaranty applied to Gorchoff's liability as an endorser, not merely to money loaned directly to him, and that the term "borrower" (used in the document to refer to Gorchoff) was a term of convenience and not meant to define the extent of the guaranty. As the transaction in *Fannin* occurred in Texas, the court applied Texas statutory law, which provided that the obligations of an endorser constituted a "liability," an obligation covered by the subject guaranty, but relied upon *Booth v. Irving National Exchange Bank* (1911), 116 Md. 668, 674, 82 A. 652, 654, as persuasive. In *Booth*, a guaranty of all obligations, "direct and indirect," was held sufficient to apply to the secondary obligation of the debtor, that of an endorser. The instant guaranty is even broader, referring to "* * * any and all indebtedness, obligations and liabilities (whether direct or contingent or now or hereafter due or now or hereafter incurred) * * *." Significantly, under Illinois law, a guarantor qualifies as a "debtor," a status covered by the instant document, which guaranties "any and all indebtedness." (See *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 300, 372 N.E.2d 926.) In none of the cases cited by defendants on this point was the guaranty language so broad as that contained in the instant guaranty. (*National Bank of Commerce v. Rockefeller* (8th Cir. 1909), 174 F. 22 (guaranty of "debts"); *Western Bank v. Youngs* (1976), 274 Or. 213, 545 P.2d 886 ("all indebtedness"); *Trego WaKeeney State Bank v. Maier* (1974), 214 Kan. 169, 519 P.2d 743 (application of *ejusdem generis* to specifically identified obligations, thereby distinguishing *Fannin*).) Under *Fannin*, therefore, we hold that the personal guaranty at issue here reaches the personal guaranty for Select's liability under its corporate guaranty.

■■ Finally, defendants contend that the personal guaranty is ambiguous in two respects and that parol evidence (*i.e.*, the affidavits and exhibits attached to their motion for summary judgment) is admissible to establish that the guaranty was intended to apply only to loans made directly to Select. First, the statement, "[t]his guaranty shall be a continuing, absolute and an unconditional guaranty * * *" is allegedly inconsistent with the phrase, "* * * the [b]ank may * * * [g]rant credit from time to time * * * in excess of the amount at which the right of recovery * * * is limited," since the first phrase, by use of the word "absolute", characterizes the guaranty as unlimited, yet the second phrase contemplates a grant of credit beyond the amount to which the guaranty is limited. The guaranty is also allegedly ambiguous wherein it provides that the undersigned guaranties "any and all indebtedness, obligations and liabilities * * * of the Debtor to the Bank, including liabilities of partnerships created while the Debtor was a member thereof * * *," in that the sentence first describes Select as primarily indebted to the bank, then

covers the liabilities of partnerships of which Select is a partner. Neither ambiguity, if it can be said to exist at all, is related to the substance of this suit; these objections do not affect the integrity of the guaranty as to the issues presented here. The guaranty contract being unequivocal in its terms speaks for itself and permits no parol evidence in explanation of its language. (*Sinnickson v. Perkins* (1907), 231 Ill. 492, 83 N.E. 194; *Rozoff Associates, Inc. v. Purity Corp.* (1977), 56 Ill. App. 3d 1, 3, 371 N.E.2d 976.) The affidavits submitted in support of defendants' motion for summary judgment cannot be utilized, therefore, to modify the terms of the guaranty. Furthermore, whatever prior negotiations, understandings and verbal agreements may have been considered before the execution of the guaranty, they must be deemed to have been merged into the written contract and are thereby extinguished. *Adams v. Eisenstein* (1928), 248 Ill. App. 559; *Johnson v. Flueckiger* (1980), 81 Ill. App. 3d 623, 401 N.E.2d 1317.

With regard to Harris' motion for summary judgment, it appears that the trial court never reached the merits of this motion in view of its analysis of the guaranty under section 28 of the Banking Act. Accordingly, the contents of the motion, together with the issues raised concerning its supporting affidavit, should be weighed by the trial court for a determination of whether Harris is entitled to summary judgment or must proceed to try material issues of triable fact. *Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 392 N.E.2d 1352.

For the foregoing reasons, we reverse and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS and DOWNING, JJ., concur.