854 P.2d 155

**INDIAN VILLAGE SHOPPING CENTER INVESTMENT COMPANY, a California limited partnership, Plaintiff/Appellant,**

v.

**The KROGER COMPANY, a Michigan corporation, Defendant/Appellee.**

No. 2 CA–CV 93–0071.

Court of Appeals of Arizona, Division 2, Department B.

May 28, 1993.

Gallagher & Kennedy, P.A. by Stephanie Nichols–Young, Phoenix, for plaintiff/appellant.

Bonnett, Fairbourn & Friedman, P.C. by H. Sullivan Bunch and Elaine A. Ryan, Phoenix, for defendant/appellee.

## OPINION

DRUKE, Presiding Judge.

 Indian Village Shopping Center Investment Company (Indian Village) appeals from an adverse summary judgment on its complaint to enforce a guaranty executed by The Kroger Company (Kroger). We view the facts in the light most favorable to the party against whom summary judgment was granted. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R.Civ.P. 56(c), 16 A.R.S.; *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990).

Indian Village is the successor to the landlord's interest in a 20–year lease executed in May 1973 with SupeRx California Drug Stores, Inc. (SupeRx).[1] The lease was for 13,350 square feet in a shopping center located at the intersection of 16th Street and Indian School Road in Phoenix, Arizona. In January 1974, Kroger executed a guaranty in which it agreed to pay the rent if SupeRx defaulted, which occurred in May 1990.

The lease was modified four times; however, Kroger only consented to the first three modifications. It is the fourth modification that gives rise to this dispute. In that modification, Indian Village and SupeRx agreed to reduce the size of the leased area by 5,200 square feet, or 39 percent, which resulted in a corresponding reduction of SupeRx's rent and the loss of its frontage on Indian School Road. The issue thus presented is whether the fourth modification of the lease, made without Kroger's consent, discharged it from its guaranty.

### RESTATEMENT OF SECURITY

 The issue presented is one of first impression in Arizona. In such circumstances, the law of the Restatement is usually applied. *Fort Lowell–NSS Ltd. Part-*

*nership v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990). Here, we apply the Restatement of Security (1941), notwithstanding Indian Village's argument to the contrary. It argues that the Restatement of Security (Restatement) is inapplicable because this case involves a guaranty and the Restatement involves suretyship. This argument is refuted by the Restatement itself. Comment g to § 82 plainly states:

> The term "guaranty" is used in this Restatement as a synonym for suretyship. "Guarantor" is used as a synonym for surety.

Indian Village claims, however, that its argument is supported by the following principle of law from *McClellan Mortgage Co. v. Storey*, 146 Ariz. 185, 188, 704 P.2d 826, 829 (App.1985): "[A] 'guarantor' would never be a 'surety' under the normal meaning of these terms." In *Storey*, appellant argued that guarantors were not covered by Arizona's suretyship statutes, A.R.S. §§ 12–1641 through 12–1646. This argument was categorically rejected by the court. It first observed that § 12–1646 explicitly states that "[t]he remedy provided in this article for sureties extends to endorsers, *guarantors*, drawers of bills which have been accepted, *and every other suretyship....*" (Emphasis supplied.) The court then found that the phrase "and every other suretyship" meant that "the statute applies to all types of relationships in which one person agrees to answer for the debt of another, not just those specifically listed in the statute." *Storey*, 146 Ariz. at 188, 704 P.2d at 829. It is thus apparent that the principle of law upon which Indian Village relies was neither controlling in *Storey*, nor is it here.

### DISCHARGE OF SURETY

 We now turn to the primary issue of whether Kroger was discharged from its guaranty as a result of the fourth modification of the lease made without its consent. Restatement § 128 sets forth the circum-

---

**1.** The original lessee's interest was assigned to SupeRx of Arizona, Alabama and Georgia Cor- poration.

stances in which a discharge will occur. It provides:

Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment

(a) the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety, and

(b) the compensated surety is

(i) discharged if the modification materially increases his risk, and

(ii) not discharged if the risk is not materially increased, but his obligation is reduced to the extent of loss due to the modification.

It is at once apparent that for purposes of discharge, § 128 draws a distinction between compensated and non-compensated sureties. That distinction is governed by comment i to § 82, which states:

The term 'compensated surety' is used in [this] Restatement ... to mean a person who engages in the business of executing surety contracts for a compensation called a *premium*, .... Other sureties, whether strictly gratuitous or whether receiving some pecuniary advantage, whose surety contracts are occasional and incidental to other business, are not included among compensated sureties.

(Emphasis supplied.) Because this record is devoid of any evidence that Kroger was paid a "premium" for its guaranty, we find that it is a non-compensated or gratuitous surety, rather than a compensated surety.

Indian Village nevertheless contends that Kroger is a compensated surety because it was SupeRx's parent company when the original lease was executed and therefore benefited from an allegedly reduced rent SupeRx paid as a result of the guaranty. In support of this contention, Indian Village cites *Old National Bank of Washington v. Seattle Smashers Corp.*, 36 Wash. App. 688, 676 P.2d 1034 (1984), a case we find unpersuasive. There, the court simply assumed, without discussion, that because the stockholders and directors benefited from their corporate guaranty, they were compensated guarantors. Moreover, as

the above comment i to § 82 makes clear, a surety's receipt of "some pecuniary advantage" is insufficient for it to be "included among compensated sureties." *See also In re Landwehr's Estate*, 286 Mich. 698, 282 N.W. 873 (1938) (the term "gratuitous" guarantor does not mean there was no consideration for guaranty, only that guarantor is not in business of guaranteeing obligations).

■ Indian Village next contends that because the space reduction resulted in a corresponding rent reduction, the lease modification benefited Kroger and precluded its discharge on the guaranty. We would agree if it could be said that the modification were, pursuant to § 128(a), "of the sort that can only be beneficial to the surety...." Under such circumstances, a non-compensated surety is not discharged on its guaranty. *First Union National Bank of North Carolina v. King*, 63 N.C.App. 757, 306 S.E.2d 508, 510 (1983) (gratuitous surety not discharged by modifications which reduced guaranteed debt and added second principal to look to for payment). *Accord Harris Trust and Sav. Bank v. Stephans*, 97 Ill.App.3d 683, 52 Ill.Dec. 927, 422 N.E.2d 1136 (1981); *Nike, Inc. v. Spencer*, 75 Or.App. 362, 707 P.2d 589 (1985). Here, however, the record does not permit us to reach the conclusion that Kroger could only benefit from the 5,200–square foot reduction in the size of the leased premises, even though it benefited from the corresponding rent reduction. There was no unanimity as to whether it benefited from the loss of frontage on Indian School Road. On the one hand, the affidavit filed in support of Kroger's motion for summary judgment states in relevant part:

The portion of the leased space cut out of the Lease is the portion with the most visibility to the traffic traveling on Indian School Road. The remaining space is in the interior of the strip center, with virtually no street visibility.

On the other hand, Indian Village's two opposing affidavits state in relevant part that the frontage loss did not "negatively impact the access to or visibility of the

balance of the leased premises," or "make the space previously leased by SupeRx Drug Stores less attractive, less visible or less accessible." Under these circumstances, where the effect of the modification is a matter of conjecture, the noncompensated surety must be discharged. Comment e to § 128 states:

> The rule does not permit a speculation as to whether the change may or may not have been to the non-compensated surety's advantage. It must be of the sort that by its very nature, in no circumstances, can increase the risk of such a surety.

Accordingly, we hold that Kroger, a noncompensated surety, was discharged on its guaranty by the fourth modification of the lease, made without its consent, and was therefore properly granted summary judgment by the trial court.

 We also conclude that the trial court properly awarded Kroger its attorneys' fees. We decline to hold that the trial court abused its discretion in awarding attorneys' fees simply because, as Indian Village argues, the case raises a new or novel issue in this jurisdiction. Kroger's request for attorney's fees on appeal is granted upon compliance with Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

FERNANDEZ and HATHAWAY, JJ., concur.