NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

FLASH & THE BOYS, LLC, an Arizona limited liability company; and
ALBERT SCHILLINGER, JR., Trustee of Nationwide Mortgage Plan and
Trust, *Plaintiffs/Appellees*,

*v.*

W. FLOYD SAMONS and DIANE M. GALATI, husband and wife; S.B.C.,
INC., an Arizona corporation; and SAMONS BROS. FRAMING, INC., an
Arizona corporation; BRIAN LESK, *Defendants/Appellants*

No. 1 CA-CV 13-0531

FILED 2-17-2015

---

Appeal from the Superior Court in Maricopa County
No. CV2009-010004
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

---

COUNSEL

Jaburg & Wilk PC, Phoenix
By Roger L. Cohen and Kathi M. Sandweiss
*Counsel for Plaintiffs/Appellees*

Warner Angle Hallam Jackson & Formanek, PLC, Phoenix
By John A. Buric, Robert Maysey, J. Brent Welker
*Counsel for Defendants/Appellants* W. Floyd Samons, Diane Galati, SBC, Inc.
and Samons Brothers Framing, Inc.

The Frutkin Law Firm PLC, Phoenix
By Jonathan B. Frutkin and Shannon E. Hennessey
*Counsel for Defendant/Appellant* Brian D. Lesk

---

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in
which Judge Maurice Portley and Judge Jon W. Thompson joined.

---

**G O U L D**, Judge:

**¶1**         W. Floyd Samons, Diane Galati, Brian Lesk, S.B.C., Inc.,
("SBC") and Samons Bros. Framing, Inc., ("Samons Bros.") (collectively
"Appellants") appeal from the trial court's grant of summary judgment to
Flash & the Boys, L.L.C. ("Flash") and Albert Schillinger, Jr. (collectively
"Appellees") for breach of Appellants' guaranties.   For the following
reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**         This case involves an action by Appellees, as holders of a
promissory note, to enforce the personal guaranties signed by Appellants
for the note.

**¶3**         In April 2005, Marbuck, L.L.C., purchased 128 vacant lots
("the Buckeye Property") from Deseret Sky Development, LLC ("Deseret")
for the total purchase price of $5,312,000.00.   The real estate purchase
contract provided that Deseret, the seller, would develop the property into
128 finished lots.

**¶4**         Sir Mortgage loaned Marbuck $3,400,000.00 of the purchase
price, and obtained a first position note and deed of trust.  Additionally, as
partial payment for the Buckeye Property, Marbuck issued a promissory
note ("the Note") to Deseret in the amount of $1,167,680.00 on April 14,
2005.   The Note was secured by a third deed of trust on the Buckeye

2

Property placed behind two other loans also providing financing for the purchase.

¶5          Marbuck is a single asset entity created by Samons and Lesk for the purchase of the Buckeye Property.  The managing members of Marbuck are BDL Properties Nevada, LLC, which is managed by Lesk, and Rancho Sierra Development, LLC, whose sole member is Samons.  Lesk and Samons signed the Note in their corporate capacities on behalf of Marbuck.  They also both individually signed the Note personally guaranteeing the debt.

¶6          In July 2005, Sir Mortgage contacted Flash about investing in a loan to Deseret for development of property in Casa Grande.  The Note on the Buckeye Property would serve as collateral for the loan, and Sir Mortgage offered to re-assign the Note to Flash as part of its investment in the loan.  Appellees ultimately decided to invest in the Casa Grande loan.

¶7          Sir Mortgage made the loan to Deseret, which in turn assigned its Note on the Buckeye Property to Sir Mortgage on July 25, 2005.  In conjunction with this assignment, Deseret and Marbuck executed an estoppel certificate dated July 25, 2005.  The certificate, executed for the benefit of Sir Mortgage, stated that there was no present default in the performance of any term or condition of the Note by either party as of the date of the certificate.  Sir Mortgage then assigned the Note to Appellees as collateral for their investment.

¶8          On October 26, 2007 the Note was modified pursuant to a Modification Agreement.  The Modification Agreement was negotiated by Lesk and Samons on behalf of Marbuck.  It extended the maturity date of the Note to March 15, 2009, established a new payment schedule, and provided additional collateral.  The Modification Agreement also contained a section requiring personal guarantees to be executed by Samons and his wife Diane Galati, and Lesk, and corporate guarantees by Samons Bros., and SBC.  All parties signed the Modification Agreement.

¶9          New guaranty forms were provided to all guarantors in connection with the Modification Agreement.  Samons and Galati signed the guaranty as individuals, and Samons executed corporate guarantees for Samons Framing and SBC.  The guarantees provided in connection with the Modification Agreement (the "long form guaranty") waived certain rights of the Guarantor and consented to Lender's addition, release or substitution "of any one or more Guarantors" without affecting the Guarantor's liability.  Lesk never signed a long form guaranty.  When he was asked to sign and

return the long form guaranty he stated that he had already signed a guaranty in connection with the original Note.

¶10 Marbuck defaulted on its obligations under the Note in 2009, and Appellees sued Samons, Galati, Lesk, and SBC to enforce the guaranties.

¶11 During the course of the litigation, the trial court made a number of rulings as to Lesk that are not being appealed. The court determined that Lesk signed the Note individually as guarantor, and that Lesk explicitly consented to the Modification Agreement. In addition, the court found that while the Modification Agreement modified the Note, it did not create a new contract. As a result, the trial court concluded that Lesk's personal guaranty on the Note remained in full force and effect, and extended to the obligations, terms and conditions of the Modification Agreement, thereby obliging Lesk in his personal capacity as guarantor for the Note as modified.

¶12 Following the court's rulings as to Lesk, the parties filed a series of motions for summary judgment. Appellees moved for summary judgment arguing that as holders in due course of the Note they are entitled to judgment on the guaranties. The Samons parties moved for partial summary judgment arguing that due to Lesk's failure to sign the long form guaranty they should be released from the guaranties and the Modification Agreement should be invalidated.

¶13 The trial court granted Appellees' motion and denied the Samons parties' motion. The court concluded that Appellees were holders in due course of the Note, that they acquired the Note for value, in good faith, and without notice that any party had a defense to enforcement of the Note. Specifically, the court found there was insufficient notice to either Flash or Schillinger of any default by Deseret to defeat their holder in due course status at the time they negotiated the assignment of the Note. Furthermore, the trial court determined that the obligation to finish the 128 lots on the Buckeye Property was an executory promise under the real estate purchase contract, not a condition to payment of the Note.

¶14 The court also denied the Samons parties' motion for partial summary judgment. The court ruled that, consistent with its prior rulings, Lesk's guaranty extended to the Modification Agreement, that any differences in the form of guaranty between that signed by Lesk and those signed by the Samons parties was immaterial, and that the differences did not change the underlying Modification Agreement. The court reasoned

that because the guaranties existed for the benefit of Appellees, Appellees could waive all or some of them.

¶15        Following entry of judgment, both Lesk and the Samons parties timely appealed.  However, only the Samons parties have filed appellate briefs.  Lesk filed a general "joinder" in Samons parties' briefs.[1]  As a result, Lesk has not challenged the trial court's finding that he is bound by his personal guaranty on the original Note.

## DISCUSSION

I.       Standard of Review

¶16        A trial court may grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  We review the grant of summary judgment de novo.  *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011).  In reviewing a trial court's grant of a motion for summary judgment, we view the facts "in the light most favorable to the party against whom summary judgment was entered."  *Id.*

II.      Guarantors' Liability

¶17        Appellants claim they should be discharged from their liability as guarantors.  They argue that because Lesk did not sign the long form guaranty provided in connection with the Modification Agreement, this constituted a material change in their obligation under the Note.  Appellants argue this change should discharge their liability because it operated to the detriment of some of the guarantors; under the long form guaranty, the Lender was given the added right to release Lesk as a guarantor without affecting the Samons parties' liability, a right not granted under the original guaranties.  We disagree.

¶18        A guaranty is a contract subject to typical principles of contract interpretation; "[a]s with any question of contract interpretation, our goal is to effectuate the parties' intent, giving effect to the contract in its entirety."  *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 219, ¶ 7 (App. 2002).  "Where the language of a contract is clear and unambiguous, it must be given effect as it is written."  *Consol. Roofing & Supply Co., Inc. v. Grimm*, 140 Ariz. 452, 455 (App. 1984); *Giovanelli v. First Fed. Sav. & Loan Ass'n of Phx.*, 120 Ariz. 577, 583 (App. 1978) (stating that where no ambiguity exists,

---

[1]       Based on Lesk's joinder, we use the term Appellants to refer to all guarantors.

the terms will be construed from the four corners of the contract). Only where the contract is ambiguous can the court apply rules of construction to strictly construe the guaranty's terms to limit the liability of the guarantor. *Valley Nat. Bank of Phx v. Shumway*, 63 Ariz. 490, 497 (1945).

¶19        A guaranty contract is a "promise to pay an obligation between a creditor and debtor" that is "secondary or collateral to the principal contract." *Howard v. Associated Grocers*, 123 Ariz. 593, 595 (1979). The guarantor is not a party to the original obligation; thus, his liability is not controlled by the underlying contract. *McClellan Mortg. Co. v. Storey*, 146 Ariz. 185, 188 (App. 1985). Rather, the guarantor's obligation arises from the debtor's liability; "unless the debtor himself is bound to pay, the guarantor is not bound." *Howard*, 123 Ariz. at 595. The terms of the guaranty contract determine "[t]he nature and extent of a guarantor's liability." *Tenet*, 203 Ariz. at 219, ¶ 7.

¶20        Because the guarantor binds himself for a specific liability of a specific debtor, a modification of the debtor's underlying obligation may discharge the guarantor's liability. *See Indian Vill. Shopping Ctr. Inv. Co. v. Kroger Co.*, 175 Ariz. 122, 123-24 (App. 1993). For example, "the release of the principal debtor without consent of the guarantor releases" the guarantor from his liability. *Howard*, 123 Ariz. at 595 (quoting *Commercial Credit Co. v. Phx. Hudson-Essex, Inc.*, 33 Ariz. 56, 59 (1927)). As a general matter, when a modification of the debtor's underlying obligation only serves to benefit, or decrease a guarantor's liability, the guarantor is not discharged. *Indian Vill.*, 175 Ariz. at 124. However, a guarantor will be discharged when a modification potentially harms a guarantor by increasing his liability. *Id.*; *see* Restatement (First) of Security § 128 (1941 & 2014 Supp.).

¶21        Appellants rely on *Indian Village* and *Horrall* to argue that Lesk's failure to sign the long form guaranty is a material change in the underlying obligation that should discharge their obligation. We disagree. In *Horrall* a change in the principal was determined to be a "material change in the obligation not assented to by the surety" that "discharge[d] the surety from liability." *W. Sur. Co. v. Horrall*, 111 Ariz. 486, 487 (1975). In *Indian Village*, the court concluded that a commercial lease modification resulting in reduction of the size of the leased area, the rent due, and the frontage on a main road was a material change to the underlying obligation. *Indian Vill.*, 175 Ariz. at 124. Because there was conflicting evidence as to whether the debtor's liability under the lease was increased or decreased by the loss of frontage on a main road, the court was unable to conclude the modification *only* benefited the guarantors. *Id.* Neither case supports Appellant's

assertion that Lesk's failure to sign the long form guaranty constituted a material change in the *debtor's* obligation under the Note, thereby discharging Appellants' liability.

¶22 We note that neither the language of the Modification Agreement nor that of the long form guaranty requires all guarantors to execute identical guaranties. The Modification Agreement simply required that Samons, Galati and Lesk sign "personal guarantees" and that Samons Bros. Framing and SBC provide corporate guarantees. On appeal, it is undisputed that Lesk and Samons expressly agreed to these terms. Thus, the fact that Samons and Lesk did not sign identical guarantees is not a deviation from the terms of the Modification Agreement. Indeed, Lesk's guaranty of the original Note complied with the requirement in the Modification Agreement that Appellants sign a "personal guaranty."

¶23 Appellants ask us to strictly construe the terms of the guaranties to limit the liability of the guarantors, but the court can only resort to such rules of construction where the contract is ambiguous. *Shumway*, 63 Ariz. at 497. Here, the guaranties are unambiguous, and we must give effect to the clear written terms of the documents. *Tenet*, 203 Ariz. at 220, ¶ 7. Lesk is bound by his personal guaranty on the face of the original Note. The other guarantors are bound by their signatures on the long form guaranty. Each guaranty is its own contract, and the differing terms of one does not materially affect the other.

¶24 Appellants also argue the Modification Agreement is invalid and unenforceable because the execution of new identical guaranties by all guarantors was a condition precedent of the Modification Agreement. Appellants contend the court incorrectly dismissed this argument by reasoning that because the guaranties were for the benefit of the lenders, not the other guarantors, the lenders could waive any of the guaranties.

¶25 "A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Serv., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006). "The purpose of contract interpretation is to determine the parties' intent"; to do so we "first consider the plain meaning of the words in the context of the contract as a whole." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). "'Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'" *Mining Inv. Group, L.L.C.*

*v. Roberts*, 217 Ariz. 635, 639, ¶ 16 (App. 2008), (quoting *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966)).

**¶26**      The Modification Agreement is clear and unambiguous. It lists the "specific terms of the [Note] and . . . Deed of Trust" the parties wished to modify. The Agreement modified the maturity date of the Note and various loan terms, and specifically required "[p]ersonal guarantees by Floyd Samons, his spouse, Diane M. Galati and Brian Lesk," and corporate guarantees by Samons Bros Framing, Inc., and SBC. The Agreement does not indicate that a particular form of personal guaranty is a condition precedent to the Agreement's validity.

**¶27**      Looking at the clear requirement of a personal guaranty within the context of the contract as a whole, there is no basis for Appellants' claim that execution of the long form guaranty was a condition precedent. The Modification Agreement sought to ensure that the individuals controlling Marbuck be personally liable to guaranty the debt; however the language simply does not indicate that only the long form guaranty would satisfy that requirement. *See Watson Const. Co. v. Reppel Steel & Supply Co.*, 123 Ariz. 138, 140 (App. 1979) ("As a general rule conditions precedent are not favored and the courts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract."); *see also John Hancock Mut. Life Ins. Co. v. McNeill*, 27 Ariz. App. 502, 507 (1976) (looking to what the parties "can objectively determine from the face of the contracting document to be conditions precedent").

**¶28**      This interpretation gives effect to the intent of the parties as evidenced by the record. All parties signed the Modification Agreement. The record shows that the Samons parties executed the guaranty forms sent to them in connection with the Modification Agreement in October 2007. As early as November 2007, Lesk had indicated he would not sign the long form guaranty because he "already signed the personal guarantee when [he] signed the 1st [N]ote." In spite of his refusal to sign the long form guaranty, all parties continued to perform under the Note as modified until 2009. Thus, Appellants' claims that the specific form of guaranty was a condition precedent to the validity of the Modification Agreement are belied by their own actions.

III.    Holder in Due Course

**¶29**      Appellants also argue there were material issues of fact precluding the trial court's conclusion that Appellees were holders in due

course of the Note. Specifically, Appellants claim Appellees took the Note with notice of a potential default because Deseret had failed to deliver finished lots under the real estate purchase contract.

¶30        Relevant to this case, to become a holder in due course a party must acquire the negotiable instrument (1) for value; (2) in good faith; and (3) without notice that any party has a defense to payment. A.R.S. § 47-3302. "The critical time for [determining] such notice is when the party comes into possession [of the note] as a holder." *Mecham v. United Bank of Ariz.*, 107 Ariz. 437, 441-42 (1971) (internal citations omitted).

¶31        Our focus, then, is on July 2005, when Appellees were assigned the Note. Regardless of the extent of improvement of the lots or Appellees' knowledge of their condition, there is no evidence in the record showing that at the time Appellees acquired the Note there was a default of either the purchase contract or the Note. There is no evidence there was a default regarding the improvements under the real estate purchase contract as of July 2005; the contract, by its express terms, did not place any time limitation in which Seller was required to complete the lots. Moreover, the estoppel certificate echoes what the plain terms of the contract establish; no party was in default at the time the Note was assigned to Appellees. There is also no evidence the payments under the Note were overdue when Appellees acquired it; the Note was assigned to Appellees in July 2005, well before its original maturity date of April 15, 2006.

¶32        Appellants also challenge Appellees' good faith in acquiring the Note. Appellants claim that because the Note was assigned to Sir Mortgage and then to Appellees on the same day, this shows Appellees orchestrated the timing of the assignments to create holder in due course status.

¶33        With respect to holder in due course status, "[g]ood faith means honesty in fact in the conduct or transaction concerned." *Stewart v. Thornton*, 116 Ariz. 107, 110 (1977). Good faith is defined as the absence of bad faith or "guilty knowledge or willful ignorance." *Id.*

¶34        Appellants have failed to establish Appellees acted with guilty knowledge or willful ignorance. The reassignment of the Note from Sir Mortgage to Appellees was, from the outset, an express part of the investment transaction between Appellants and Sir Mortgage. Sir Mortgage brokered financing of the Casa Grande loan for Deseret, the beneficiary of the Note; part of the collateral for that loan was assignment of Deseret's interest in the Note. Email correspondence between Sir

Mortgage and Flash clearly shows the contemplated assignment was to serve as collateral for the Casa Grande loan from Sir Mortgage to Deseret. Appellants were aware that Sir Mortgage intended to assign the interest it acquired in the Note when they signed the estoppel certificate, which explained that Sir Mortgage was contemplating making a loan to Deseret "to be secured in part by an assignment of the . . . Note."

**¶35**        Appellants have also failed to show any facts indicating that the timing of the assignment was somehow orchestrated in order to preserve Appellees' holder in due course status. The fact Sir Mortgage obtained the Note and re-assigned it the same day to Appellees does not, by itself, give rise to bad faith. There is nothing in the record to indicate that on the date of the assignment to Appellees, the Note or the real estate purchase contract were on the verge of default or expiration. The trial court correctly concluded that no reasonable juror could find lack of good faith based on the evidence presented.

IV.    Judgment Binding on Community and Separate Assets

**¶36**        Samons and Galati object to the form of judgment to the extent that it binds both their community and separate assets. Appellees point out that this argument, raised for the first time in the opening brief, has not been preserved for appeal. Appellees are correct. Taking as true Samons and Galati's claims that they were not aware of the court's intent to enter judgment against both their community and separate assets until after the judgment was entered, they were not relieved of the requirement to raise this argument in a motion pursuant to Arizona Rule of Civil Procedure 59(a) or 60(c). *See Soltes v. Jarzynka*, 127 Ariz. 427, 431 (App. 1980) ("The trial court should be given the opportunity for further reflection and to exercise a more mature judgment."). We consider these arguments waived.

**CONCLUSION**

**¶37** For the reasons above, the trial court's judgment is affirmed. Both the Note and the Guaranties signed by Appellants oblige Appellants to pay Appellees' costs and attorneys' fees. Accordingly, Appellees are entitled to their costs and attorneys' fees upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama