Argued October 27, 1975, reversed February 12, 1976

WESTERN BANK, *Respondent,*

*v.*

YOUNGS, *Appellant.*

545 P2d 886

*Keith Erickson,* Redmond, argued the cause for appellant. On the brief were Walter I. Edmonds, Jr., and Bryant, Edmonds & Erickson, Redmond.

*Stanley E. Clark,* of Clark & MacMurray, Redmond, argued the cause and filed a brief for respondent.

Before O'Connell, Chief Justice, and McAllister, Denecke, Tongue, Howell and Bryson, Justices.

HOWELL, J.

## HOWELL, J.

Plaintiff bank[1] filed this action against defendant based on defendant's 1964 guaranty of her husband's obligations. After a jury trial which resulted in a verdict for plaintiff, a new trial was ordered; the action was re-tried before the court without a jury, and a judgment was entered for plaintiff bank. On appeal the defendant contends the trial court erred in overruling a demurrer to plaintiff's complaint on the grounds that the complaint failed to state a cause of action, in that there was no consideration for defendant's guaranty of her husband's guaranty. Defendant also argues that the court erred in finding that defendant was liable to plaintiff on her guaranty.

The facts are not in dispute.

The defendant and her husband, John, owned a small farm in central Oregon. Their son, Richard, operated a separate farm in a neighboring town. In 1963 Richard began financing his farming operations through plaintiff bank. For two years the husband, John, co-signed Richard's notes, but thereafter plaintiff made loans to Richard on Richard's signature alone until 1969. During the same period John was also financing his own operations with plaintiff. On December 10, 1964, defendant executed a continuing guaranty for her husband, John, to plaintiff.

In 1969 John signed a guaranty to plaintiff for Richard. Richard defaulted on his obligations to plaintiff and was declared a bankrupt in 1970. Defendant's husband, John, died in 1972.

Plaintiff's complaint sets forth Richard's note which was signed on June 23, 1969, and alleges that John executed a guaranty of Richard's note on the same day. The complaint also alleges that:

"On December 10, 1964, Mrs. John L. Youngs for

[1]Plaintiff Western Bank is the successor in interest to the bank actually involved in these transactions, the Bank of Central Oregon. In order to simplify matters, we will attribute the actions of the Bank of Central Oregon to plaintiff Western Bank.

valuable consideration in the extension of credit of Bank of Central Oregon to John L. Youngs, executed an unlimited guaranty of present and future credit of [or] obligations of John L. Youngs."

The complaint further alleges Richard's failure to pay the note and John's subsequent death.

■ Defendant's demurrer was predicated upon a failure of consideration. However, we feel that plaintiff's complaint adequately stated a cause of action, and that the issue concerning the alleged lack of consideration was a matter to be raised in defendant's answer. Consequently, the trial court's action in overruling the demurrer was proper.

The defendant also appeals the trial court's finding that there was consideration for defendant's guaranty and that her guaranty was comprehensive enough to cover her husband's guaranty of their son's note. Defendant's guaranty was executed on December 10, 1964, and stated, in part:

"For and in consideration of the extension by Bank of Central Oregon * * * of present or future credit * * * and in order to induce the Bank to extend such present or future credit to the Borrowers, which the Bank is unwilling to do without further security, or this further assurance of payment, the undersigned * * * hereby guarantee and promise to pay any and all presently existing indebtedness of the Borrowers to the Bank, all indebtedness incurred by Borrowers to the Bank contemporaneously with the delivery hereof, and all indebtedness incurred by Borrowers to the Bank hereafter and prior to the Bank's receipt of written notice from the Guarantors terminating the applicability of this guaranty to indebtedness thereafter incurred.

"* * * * *.

"* * * Guarantors waive all * * * notices of nonperformance * * * and notices of acceptance of this guaranty and of the existence, creation, or incurring of new or additional indebtedness."

The record shows that this is not a situation in which a guaranty has been signed following the com-

pletion of the underlying credit transaction so that some additional consideration must be made for the guaranty itself. *Compare Tomihiro v. United Hotel Corp.,* 145 Or 629, 632, 28 P2d 880 (1934). Here, the guaranty was in consideration of "present or future credit" advanced by plaintiff to defendant's husband, John Youngs. The record indicates that numerous loans were thereafter made by plaintiff to defendant's husband, John. These loans were good and sufficient consideration for defendant's continuing promise to pay "all indebtedness incurred by [her husband] to the Bank hereafter * * *." Thus, the real issue on this appeal is whether defendant's guaranty encompasses her husband's obligation arising out of his own guaranty of their son's note in 1969. If her husband's guaranty obligation is encompassed by defendant's guaranty of his "indebtedness" to plaintiff "incurred hereafter," no additional consideration would then be necessary.

The definition of the term "indebtedness" which was included in this defendant's guaranty contract was very broad.[2] However, that provision of the contract cannot be read in isolation; it must be considered in light of other provisions of the contract so that the contract may be interpreted as a whole. *See Sproul et al v. Gilbert et al,* 226 Or 392, 359 P2d 543 (1961); *Pettigrove v. Corvallis Lbr. Mfg. Co.,* 143 Or 33, 21 P2d 198 (1933).

The opening sentences of the contract describe the nature of the guaranty in the narrow terms of a transaction in which the bank extends credit to the borrower. The agreement provides that the guaranty is "in consideration of the extension of the Bank of Central Oregon * * * of present or future credit * * * *and*

---

[2]"The word 'indebtedness' is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers * * * heretofore, now, or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Borrowers may be liable individually or jointly with others * * *."

[ 217 ]

*in order to induce the Bank to extend such present or future credit to the Borrowers * * *."* (Emphasis added.) The thought seems to be that if the bank were to enter into any transaction with defendant's husband, the borrower, which involved the extension of credit to John Youngs, then defendant would become secondarily liable for that indebtedness. In our view this creates at least an ambiguity as to the true intention of the parties as of the time they entered into this agreement. In such cases, the meaning adopted will be that "which the surrounding circumstances indicate that it was the most reasonable for the promisee to believe the promisor to have intended." Arant on Suretyship 140 (1931).

In this connection we believe that it is significant that one of the bank's own officers testified as follows concerning the reasons these agreements were entered into by the farm families in their area:

"Q  Now, why would you have a guarantee of the wife for a husband in this particular situation?

"A  Well, it's real simple. Normally we take gross guarantees, so that if the husband is out in the field working, he can send his wife in and borrow the money without his signature, or if he is free, he can come into the bank without his wife and borrow the money without her signature."

Thus, when we look to the intention of the parties in order to resolve the ambiguity of the contract as written, it becomes clear that this agreement was not as extensive as plaintiff now contends. Even if we were to remain in doubt as to what these particular parties intended by this agreement, defendant would be aided by the rule of construction that "[i]f the surrounding circumstances leave the meaning in doubt, that meaning will be adopted which is least favorable to the person who used the language." Arant, supra at 140.

Finally, our view of this case is also in accord with the results reached by other courts in two similar

cases, *Trego WaKeeney State Bank v. Maier,* 214 Kan 169, 519 P2d 743 (1974), and *Rohn v. Weld County Bank,* 155 Colo 490, 395 P2d 1003 (1964).[3]

Reversed.

---

[3] *But see Fannin State Bank v. Grossman,* 30 Ill App 2d 484, 175 NE2d 268 (1961).