Argued and submitted May 18, 1984, reversed and remanded April 17, 1985

# BANK OF THE NORTHWEST,
*Respondent,*

*v.*

# BRATTAIN,
*Appellant.*

(16-83-04178; CA A30322)

698 P2d 536

Fred G. Long, Eugene, argued the cause for appellant. With him on the brief was Long & Piper, Eugene.

Jacquelyn Romm, Eugene, argued the cause for respondent. With her on the brief was Cass, Scott, Woods & Smith, Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

Newman, J., dissenting.

## WARDEN, J.

Plaintiff bank sued defendant on a personal guaranty in the amount of $150,000 given by defendant in August, 1977, when she was married to Carl Petersen. In 1980, defendant and Petersen were divorced and, in 1981, plaintiff loaned $190,368.53 to Petersen, dba Petersen Construction Company, taking a promissory note and an assignment of a land sale contract as security. Petersen defaulted on the note, and plaintiff obtained a judgment against him for $204,914.63, with interest from August 19, 1982. When Petersen did not pay the judgment, plaintiff filed this action to recover from defendant. The trial court granted plaintiff's motion for summary judgment.

ORCP 47C provides that a motion for summary judgment should be granted if the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We do not agree with the trial court's conclusion that there is no triable issue of fact in this case. Consequently, we do not agree that plaintiff is entitled to judgment against defendant as a matter of law.

Although a guaranty is a contract and is subject to the general rules of contract construction, it also

> "should not receive a strict and technical interpretation but a fair, and reasonable one, according to the true import of its terms, and what may be fairly presumed to have been the intention and understanding of the parties, with a view to the furtherance of its spirit and in order to attain the object designed[.]" *Marshall-Wells Co. v. Tenney et al,* 118 Or 373, 383, 244 P 84 (1926). (Citations omitted.)

Plaintiff argues that the guaranty signed by defendant, "by its express terms, is an absolute, unconditional obligation on the part of defendant as guarantor to pay plaintiff if the principal fails to do so." We disagree. The contract is ambiguous as to the intention of the parties at the time it was made.

In *Western Bank v. Youngs,* 274 Or 213, 545 P2d 886 (1976), the defendant wife had given the bank "an unlimited guaranty of present and future credit" for the obligations of her husband. Her husband later guaranteed loans from the bank to their son, who failed to pay. The husband died, and

the bank sought to collect the son's debts from the wife. The court found that the testimony did not support a finding that the contract was as extensive as claimed by the bank and held that the wife was not secondarily liable for the debts of the son:

> "The definition of the term 'indebtedness' which was included in this defendant's guaranty contract was very broad. However, that provision of the contract cannot be read in isolation; it must be considered in light of other provisions of the contract so that the contract may be interpreted as a whole." 274 Or at 217. (Footnote omitted; citations omitted.)

■    Here, also, the language must be interpreted in the light of the entire document. Both defendant and Petersen signed the guaranty. It obligates "[t]he undersigned, on behalf of themselves and of the *marital communities consisting of themselves and their respective wives, if married*" (emphasis supplied) and provides in its closing paragraph:

> "If the Customer is a corporation, the undersigned guarantee and represent that they are stockholders, or directors or officers and/or are financially interested in the Customer, *and if married, their marital communities are so interested.*" (Emphasis supplied.)

The guaranty does not specify whether the terms "marital communities" and "if married" are meant to apply to the time when the document was signed or to the date when an obligation might be incurred. Plaintiff has admitted in its reply that at the time the guaranty was signed defendant was married to Petersen.

■    Defendant, in her third affirmative defense, has alleged the fact of her divorce from Petersen and that she "cannot be responsible for contracts entered into or debts incurred solely by her former husband subsequent to their dissolution * * *." An issue has been raised by the terms of the contract and these allegations as to whether plaintiff and defendant intended her guaranty of Petersen's obligations to be predicated on the marriage. If so:

> · "It is well settled that, after the intention of the parties or the scope of the guarantor's undertaking has been determined, by the ordinary rules of construction either from the instrument itself in which it is clearly expressed, or from the instrument and the surrounding circumstances, the rule of

*strictissimi juris* applies, that is, that the guarantor is entitled to have his undertaking as thus determined strictly construed and that it cannot be extended by construction or implication beyond the precise terms of his contract; and he has the right to insist upon the strict performance of any terms or conditions which have been stipulated, and it is incumbent upon one who claims the benefit of a guaranty to show that its terms have been strictly complied with[.]" *Marshall-Wells Co. v. Tenney et al, supra,* 118 Or at 383. (Citations omitted.)

Defendant's third affirmative defense also raises the issue whether the dissolution of her marriage to Petersen has released her from any obligation on the guaranty. She alleges that she and Petersen were married at the time the guaranty was given, that the marriage was dissolved effective March 16, 1980, and that plaintiff knew of the dissolution, knew that it was effective in 1980 and knew that defendant had received no benefit from plaintiff relating to the guaranty agreement after the dissolution. Defendant goes on to allege that the note evidencing the debt to which plaintiff seeks to apply her guaranty was signed by her former husband on November 27, 1981, over 20 months after the dissolution.

In its reply to defendant's third affirmative defense, plaintiff admits that defendant and Petersen were married at the time the guaranty was given and that the note to which it sought to apply the guaranty was signed after the dissolution. In his affidavit given in support of plaintiff's motion for summary judgment, Sands, executive vice president of plaintiff, made no mention of the dissolution. In her affidavit, defendant states that, at the time when she and Petersen were divorced, "Walt Sands * * * was aware of our divorce and was also aware that I was leaving the State of Oregon and no longer maintained any control or financial interest in Petersen Construction Company." She further states:

> "I had absolutely no knowledge of the loan evidenced by the note signed by Mr. Petersen on November 27, 1981. I did not consent to the signing of that note by Mr. Petersen nor * * * authorize Carl A. Petersen to sign said note with the intent to bind me personally with regard to payment of that note."

In *Marshall-Wells Co. v. Tenney et al, supra,* Beall had signed a continuing guaranty for the debts of Multnomah Ironworks, a corporation of which he was a director and the

president. Two and a half years later he resigned as director and president; about nine months later the remaining directors of the company, which was in financial difficulty, signed an agreement with its principal creditors to turn over the operation of the business to a committee. When the ironworks later went out of business, the plaintiff sought to collect from Beall on the basis of his guaranty.

The court refused to hold Beall liable. At the time of his withdrawal from the business, it was profitable. Later difficulties were caused by market problems, and the court questioned whether the business should have been continued under the conditions which existed without the consent of the guarantor, who was powerless to do anything to protect his position. The court agreed with Beall that his rights and interests had been changed by the change in the business structure and that the guaranty he gave for Multnomah Ironworks did not extend to the business while it was under the control of the committee. The court noted the general rule:

> "Any material change in the obligation or duty of the principal debtor to which the guaranty relates, by a change or alteration either in the terms of the contract between the guarantee and the principal or in the manner of its execution, will release a guarantor from liability unless made with his consent if such change takes place before the guarantor's liability is finally settled[.]" *Marshall-Wells Co. v. Tenney et al, supra,* 118 Or at 385. (Citations omitted.)

The guaranty here was given "in consideration of financial accomodations *[sic]* given or to be given to Carl Petersen dba Petersen Construction Company * * *." The 1981 loan was to Carl Petersen dba Petersen Construction Company and was for substantially more than the sum guaranteed. The guaranty was for the benefit of a business, and the guaranty contract drawn by plaintiff, as noted above, declares the "marital communities" to be financially interested in the business and obligates the "marital communities," if Petersen is married. Defendant has alleged that her marriage to Petersen was dissolved in March, 1980, and that she left Oregon and had no further involvement with Carl Petersen. Her affidavit supports her allegations and states that Sands was aware of those facts. That allows the inference that her marital community was not an interested marital community

at the time when plaintiff took the note for which it now seeks to enforce the guaranty.

There are issues of material fact as to the intention of the parties at the time the guaranty was signed and whether there was a change in the obligation or duty of Petersen to plaintiff after defendant's divorce so as to release her from the obligation of her guaranty. *See Lloyd Corporation v. O'Connor,* 258 Or 33, 37-38, 479 P2d 744 (1971).

■■ There is also a genuine issue of material fact as to whether plaintiff relied on defendant's guaranty in making the loan to her former husband more than 20 months after defendant and her husband were divorced. *See State ex rel Sweere v. Crookham,* 289 Or 3, 609 P2d 361 (1980); *State ex rel Ware v. Hieber,* 267 Or 124, 515 P2d 721 (1973). "Reliance on a guaranty is a critical factor" in determining whether a guaranty is enforceable. *White Stag Mfg. Co. v. Wind Surfing, Inc.,* 67 Or App 459, 465, 679 P2d 312 (1984). Sands' affidavit states:

> "In dealing with Petersen Construction Co., Bank of the Northwest relied on the existence and the validity of the personal guaranty of its indebtedness by Edith K. Petersen (now Brattain) and Carl A. Petersen."

In her affidavit opposing the motion, defendant states that Sands knew of the dissolution of her marriage to Petersen and that she left the state and had no further interest in or control over Petersen's construction business. Her statement creates a fact question and it cannot be concluded, as a matter of law, as the trial court must have, that plaintiff relied on the guaranty in making the 1981 loan. The fact that the face of the note lists: "Collateral: Assignment of Land Sale Contract" is additional evidence that plaintiff may have relied on other security and also raises a genuine issue of material fact as to plaintiff's reliance on the guaranty.

Because there are genuine issues of material fact, it was error for the trial court to grant summary judgment for plaintiff.

Reversed and remanded.

**NEWMAN, J.,** dissenting.

I dissent. Defendant asserts that, as guarantor, she

cannot be responsible for debts incurred by Carl Petersen, the principal debtor, subsequent to their divorce. The contrary is just what the guaranty unambiguously provides. It is not, as the majority opinion asserts, "ambiguous as to the intention of the parties at the time it was made." 73 Or App at 263.

The full text of the guaranty reads:

"In consideration of financial accommodations given or to be given to Carl Petersen dba Petersen Construction (herein called the Customer) by Bank of the Northwest, Eugene, Oregon (herein called the Bank), and in consideration of the Bank's agreeing to deal with the Customer, the undersigned, on behalf of themselves and of the marital communities consisting of themselves and their respective wives, if married, hereby jointly and severally guarantee payment to the Bank of all liabilities and indebtedness which the Customer has incurred or is under or may incur or be under to the Bank, whether arising from dealings between the Bank and the Customer or from other dealings by which the Bank may become in any way a creditor of the Customer.

"(The liability of the undersigned at any one time hereunder is limited to the principal sum of ($150,000) dollars, together with all interest due or to become due thereon to the Bank.)

"The Bank may apply all money received from the Customer or otherwise or from collateral upon such part of the customer's indebtedness as the Bank may think best, without any way limiting or lessening the liabilities of the undersigned under this guaranty.

"The Bank shall not be bound to exhaust its recourse nor to take any action against the Customer or other parties on the collateral it may hold before being entitled to payment by the undersigned of all amounts hereby guaranteed, but may make such demands and take such actions as it deems advisable.

"This shall be a continuing guaranty and shall be binding without notice to the undersigned of its acceptance, and shall cover all liabilities which the Customer may incur or be under until the undersigned shall have given the Bank notice in writing to make no further advances on the security of this guaranty; provided that such notice by any one or more of the undersigned on any indebtedness or liability incurred prior to receipt by the Bank of such notice, [sic] nor lessen nor diminish the liability of others of the undersigned who shall

not give such notice; and in the event of such notice the Bank may cease to make further advances to the Customer.

"Notice of default on the part of the Customer is hereby waived; and the undersigned jointly and severally agree to remain bound notwithstanding any extensions or renewals of any indebtedness or the liabilities hereby guaranteed or any part thereof; and consent is hereby given to the Bank to make such renewals and extensions as the Bank at its option may choose to grant or accept; and the Bank may at its option further compound and settle with the Customer or any of the undersigned or other guarantor and surrender any securities which it may now or hereafter hold belonging to the Customer, without notice to any of the undersigned and without affecting in any way the obligations of any of the undersigned to the Bank.

"If the Customer is a corporation, the undersigned guarantee and represent that they are stockholders, or directors or officers and/or are financially interested in the Customer, and if married, their marital communities are so interested."

The majority emphasizes the final paragraph of the guaranty. That does not, however, raise a question of fact whether there was "a change in the obligation or duty" (73 Or App at 267) of the husband to plaintiff, if defendant and her husband were divorced. It does not address that question at all; neither does it raise a question of fact whether the obligations of defendant were "predicated" on her marriage.

The majority erroneously asserts that the guaranty

"declares the 'marital communities' to be financially interested in the business and obligates the 'marital communities,' if Petersen is married." 73 Or App at 266.

That is *not* what the guaranty states. The last paragraph of the guaranty simply states that "if married, their marital communities are [interested in the Customer]." The majority then argues that defendant's affidavit "allows the inference that her marital community was not an interested marital community at the time when plaintiff took the note for which it now seeks to enforce the guaranty." 73 Or App at 266-67. That inference, however, does not create a genuine issue of *material* fact. ORCP 47C. It does not matter that the marital community of defendant and Petersen no longer existed and was not financially interested in the "customer" ( *i.e.,* borrower) at the time when Petersen gave the note to plaintiff. In

its first paragraph the guaranty recites that defendant and Petersen jointly and severally guarantee payment to the bank and, *if married,* their marital community does likewise. Defendant remains bound on the guarantee.

Defendant asserts in her affidavit:

"It was not my intent nor did I feel that it would continue in effect indefinitely after my divorce from Carl A. Petersen, especially with regard to new debts incurred after the date of our divorce. Since Mr. Sands knew of my divorce from Carl A. Petersen, I feel that he did, in fact, have at least implied notice that I would no longer be responsible for any further advances or new debts incurred by Carl A. Petersen, personally or dba Petersen Construction Company."

None of those assertions raises a genuine issue of material fact. It does not matter that defendant now asserts that it was not her "intent nor did I feel" that the guaranty would continue in effect after her divorce from Petersen. Neither does it matter that the bank knew of the divorce. The parties' intent at the time that the guaranty was executed is clear and unambiguous by its terms.

Neither is there a genuine issue of material fact whether plaintiff relied on defendant's guaranty in making the loan to Petersen. The affidavit of Sands, plaintiff's executive vice-president, states unequivocally that plaintiff "relied on the existence and the validity of the personal guaranty of its indebtedness by Edith K. Petersen (now Brattain) and Carl A. Petersen." All that the defendant asserts in her affidavit is that Sands was "aware of our divorce and was also aware that I was leaving the state of Oregon and no longer maintained any control or financial interest in Petersen Construction Company." Those assertions do not contradict Sands' assertion that plaintiff relied on defendant's personal guaranty. Moreover, there is no genuine issue of material fact respecting reliance simply because plaintiff may also have relied on other security for the note.

The guaranty provides that it is a continuing guaranty and covers all liabilities which Petersen might incur or be under until defendant has given plaintiff notice in writing to make no further advances on the security of the guaranty. At the time of the divorce, defendant had only to give the

described notice to be free of responsibility for Petersen's debts to plaintiff that might arise thereafter. She did not do so.

Regardless of where our sympathies might lie, the court properly granted summary judgment to plaintiff.